(119 App. Div. 401)

### KORN v. CAMPBELL.

(Supreme Court, Appellate Division, First Department. May 17, 1907.)

1. COVENANTS—RESTRICTIVE COVENANTS—PARTIES ENTITLED TO ENFORCE.

Where a party became the owner of an entire tract of land, he was at liberty to deal with it as he saw fit, though the deed conveying a part of it to one of his grantors contained the provision that it be used only for the erection of first-class private residences; and where he conveyed separate tracts to different persons, without attempting to impose any restrictions on the property, there are none that the owners can enforce between themselves.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Covenants, § 78.]

2. SAME.

In an action to enforce a restrictive covenant alleged to run with certain land, a purchaser of the land should not be eliminated from the chain of title because the mortgages which he gave, and which were afterwards foreclosed, and through which the parties hereto trace their titles, were purchase-money mortgages, as the title vested in him, so that the purchasers on the mortgage foreclosure derive their title from him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Covenants, § 87.]

Patterson, P. J., and Lambert, J., dissenting.

Appeal from Special Term.

Action by David Korn against Georgine Campbell. From a judgment for plaintiff (102 N. Y. Supp. 108), defendant appeals. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

David B. Ogden, for appellant.

Albert T. Scharps, for respondent.

SCOTT, J. On August 10, 1870, James Lenox conveyed a plot of land, 102 feet 2 inches on Madison avenue by 195 feet on Seventy-Third street, to one William Lalor, by a deed containing the familiar covenant against nuisances, to which was superadded a clause to the effect that the grantee "will use or suffer the said premises to be used for the erection of first class private residences only." It does not appear in this action that Lenox owned any other real property in the neighborhood. The lots now owned by plaintiff and defendant, respectively, are both comprised within the plot thus conveyed, and the question at issue is whether the restriction above recited still obtains against one of the lots included in said plots, so that it may be enforced by the owner of another lot, also so included. In 1870 Lalor conveyed a one-third interest in said plot to James H. Coleman, by a deed containing no covenants except one against the grantor's own acts, and containing no reference to the covenants in the deed from Lenox to Lalor. On July 1, 1871, Lalor and Coleman conveyed the whole plot to James E. Coburn by a full-covenant warranty deed, which contained the following clause:

"Subject to the conditions, covenants, and restrictions against nuisances and buildings contained in deed of James Lenox of the above-described premises."

Simultaneously with the execution of this deed Coburn executed 11 separate mortgages to the North American Life Insurance Company, each mortgage covering a separate lot, and the 11 lots, taken together, comprising the whole plot theretofore conveyed by Lenox to Lalor. These mortgages contained no reference whatever to the restrictive covenant contained in the deed from Lenox. Coburn, who was a builder, proceeded to erect houses on the several lots, and conveyed the same to different parties. In 1879, when the mortgages to the North American Life Insurance Company were foreclosed, the property now owned by plaintiff was owned by one Mary H. Moore, and the property owned by defendant was owned by one Artemas H. Holmes; the said Moore and Holmes holding title under conveyances made to them or their predecessors in title by Coburn subsequent to the execution of the mortgages to the life insurance company and subject thereto. It does not appear that any of these conveyances referred in any way to the restrictive covenants in the deed from Lenox to Lalor. In 1879 the mortgages held by the North American Life Insurance Company were foreclosed, and the lot now owned by plaintiff was conveyed by the referee to the said Mary H. Moore, then the owner of the equity of redemption thereof, and the lot now owned by defendant was conveyed by said referee to Artemas H. Holmes, then the owner of the equity of redemption thereof. The referee's deed contained no reference whatever to any restrictions upon the property, or to any restrictive covenants contained in the deed from Lenox to Lalor.

It is a well-established rule of law respecting easements that a merger of titles to the dominant and servient estates operates to extinguish the easement, as must necessarily be the case, and while such a restriction as Lenox undertook to impose upon the land which he conveyed to Lalor is not, perhaps, technically an easement, it is closely analagous thereto and is frequently termed a "negative easement." Consequently it seems to be clear that Lalor held the plot conveyed to him free from any reciprocal rights or restrictions in favor of any part of that plot as against any other. What right Lenox may have reserved in behalf of other property owned by him, if there was any, not included in the plot to Lalor, it is not necessary to consider. Lalor, therefore, had the right to deal with the property as he saw fit. If, when he came to convey it, he saw fit to impose restrictions upon its use, he could do so, or he could convey the property free from restrictions, so far as concerned the rights of one part of the plot against any other part. If he did place any restrictions upon it, it would be because he created them or elected to continue those prescribed by Lenox, not because his grantor had attempted to do so. Lewis v. Ely, 100 App. Div. 252, 92 N. Y. Supp. 705. It is at least doubtful whether he did impose any restrictions upon the property by his deed to Coburn. That was what is known as a "full warranty deed," and if, as may have been the case, Lenox actually owned other property, for the benefit of which he had created the restrictions, Lalor could not safely warrant his own title to the plot he was about to convey, unless he excepted in some way from his warranty the restrictive covenant embraced in the deed by which he had acquired the property. He therefore conveyed the property "subject to" the Lenox restrictions. The insertion of this clause in the deed to Coburn did not, however, necessarily amount to the reimposition of the restrictions upon the property, or imply an agreement on Coburn's part that he would observe the covenant. Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 213; Dingeldein v. Third Ave. R. R. Co., 37 N. Y. 575, 577. However this may be, when Coburn became the owner of the entire tract, he, in turn, was at liberty to deal with it as he saw fit, and when he came to divide the property up, and convey it to separate purchasers, as he did, he could have established or continued reciprocal restrictions upon each lot, in favor of every other, if he had seen fit to do so; but he did not.

The extent of the rule upon which the plaintiff's claim rests is that, when a plot of land belonging to a single owner is divided into lots, which are sold to different purchasers by deeds containing identical or similar restrictions, the inference and presumption is that the restrictions are intended for the common benefit of all the purchasers, and each will be permitted to enforce it against the others. These reciprocal rights, however, arise only when the property is divided up and sold to different purchasers, and that never occurred in the case at bar until Coburn conveyed the property, first by mortgage and then by deed; and neither by the mortgages nor by the deeds did he attempt to impose or continue any restrictions upon the property. Both plaintiff and defendant trace their titles back to Coburn as their com-

mon grantor, and, since he did not impose reciprocal restrictions upon the property, there are none that they can enforce as between themselves. It will not do to say that Coburn must be eliminated from the chain of title, because the mortgages which he gave, and which were afterwards foreclosed, and through which the parties hereto trace their titles, were purchase-money mortgages. It is sometimes said that, because the deed from the vendor and the mortgage from the vendee are parts of one and the same transaction, the title to the land does not for a moment rest in the vendee, but merely passes through him and vests in the mortgagee without stopping beneficially in the vendee. This statement of the law, however, does not go so far as to say that no title whatever vests in the vendee, or that subsequent purchasers on the mortgage foreclosure do not derive their title from him, but merely that he does not hold the title beneficially, so as to permit the attachment, in precedence of the mortgage, of judgments, mechanics' liens, and other claims to which ordinary mortgages would in general be postponed.

We are therefore of the opinion that as between the several owners of lots embraced in the plot above described no restrictive covenants attach.

The judgment should therefore be reversed, and the complaint dismissed, with costs in this court and the court below.

McLAUGHLIN and HOUGHTON, JJ., concur.

LAMBERT, J. The defendant in this action is the owner of certain premises at the northwest corner of Madison avenue and Seventy-Third street, in the city of New York. There is a dwelling house upon such premises, and the defendant has filed plans with the building department under which it is proposed to transform this residence into a store, with offices overhead. The plaintiff is the owner of a house and lot between Seventy-Third and Seventy-Fourth streets, on the westerly side of Madison avenue, adjoining the rear of defendant's lot, and the latter has succeeded in his action for an injunction, restraining the defendant from thus changing the residence into a business place. Both parties derive title from one James Lenox, who, on the 10th of August, 1870, conveyed a plot of land, including the premises of the plaintiff and defendant (and having a frontage on Seventy-Third street of 195 feet and a depth along Madison avenue of 102 feet 2 inches), to one William Lalor. This deed contained the following covenant:

"The said party of the second part [Lalor], for himself, his heirs, executors, administrators, and assigns, doth covenant, promise, and agree to and with the said party of the first part [Lenox], his heirs and assigns, that he will not at any time hereafter erect, make, establish, or carry on, or suffer to be erected, made, established, or carried on, in any manner or any part of the above-described and hereby granted premises, any livery stable, railroad depot, slaughter house, tallow chandlery, steam engine, smith's shop, forge, furnace, brass foundry, nail or other iron factory, or any manufactory for the making of glass, glue, varnish, or vitriol, ink, or turpentine, or for the tanning, dressing, or preparing or keeping of skins, hides, or leather, or theater, opera house, brewery, distillery, molasses or sugar refinery, lager beer or concert

saloon, or any manufactory, trade, or business whatsoever which may be in any wise noxious or offensive to the neighboring inhabitants, but will use or suffer the said premises to be used for the erection of first-class private residences only."

The court in the Equity Term granted a permanent injunction. The defendant appeals.

The presumption here, as in every other case where a restriction is inserted in a deed against undesirable structures or trades, is that the insertion was for the purpose of protecting rights which the grantor had in adjacent property. Post v. Weil, 115 N. Y. 361, 372, 22 N. E. 145, 5 L. R. A. 422, 12 Am. St. Rep. 809. The grantee, by accepting the deed containing this restriction, assumed an obligation to devote the premises within the limitations prescribed, and this agreement was enforceable by any interest entitled to invoke its protection. Post v. Weil, supra. It is conceded on the part of the appellant that the premises conveyed by Lenox to Lalor were "obviously intended to be cut up into lots," and this is manifest by the fact that the covenant was that the grantee would "use or suffer the said premises to be used for the erection of first-class private residences only," and this was the use which was actually made of the premises; a number of houses having been subsequently erected upon the premises described, each of 11 lots being separately mortgaged for the purpose of carrying out the project. Of course, it is reasonable to assume that the party purchasing the property under such restrictions gives less for it than he would have given if he had bought it unincumbered. "Can there, then, be anything much more inequitable or contrary to good conscience," to quote the language of Chancellor Cottenham in Tulk v. Moxhay, 1 Hall & Quell's Ch. Rep. 105, cited with approval in Hodge v. Sloan, 107 N. Y. 244, 252, 17 N. E. 335, 1 Am. St. Rep. 816, "than that a party who takes property at a less price, because it is subject to a restriction, should receive the full value from a third party, and that such third party should then hold it unfettered by the restriction under which it is granted?" Obviously such is not the law, and the appellant concedes that, so far as Lenox, the original grantor, is concerned, he or his heirs is entitled to have this covenant enforced; but it is urged that, as the grantor sold the entire parcel and has no further interest in the same, as between the present owners of the subdivisions there is no right to injunctive relief.

William Lalor and wife conveyed to one James H. Coleman an undivided one-third interest in the premises conveyed to Lalor, and in the deed from Lalor and his wife to Coleman there was no mention of these restrictions; but there was no partition of the premises, so that Coleman merely became the owner of an undivided one-third, all of the premises being subject to the restrictive covenant. On the 1st day of July, 1871, the said William Lalor and James H. Coleman, and their respective wives, conveyed the whole of the said plot of ground to one James E. Coburn by full-covenant warranty deed, conveying the property subject to certain specified mortgages, and containing the following words, viz.:

"Subject to the covenants, conditions, and restrictions against nuisances and buildings contained in deed of James Lenox of the above-described premises."

"The language of courts and judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which would be enforced in equity against him, takes the title subject to all easements, equities, and charges, however created, of which he has notice." Holt v. Fleischman, 75 App. Div. 593, 599, 78 N. Y. Supp. 647. It is very certain that Coburn, by accepting this deed, "subject to the covenants," etc., contained in the Lenox deed, had notice of the existence of the restriction, and took no higher title than Lalor took from Lenox. Even were it not a covenant running with the land, but a simple contract only, the grantee, having record notice, is bound by it. Spencer v. Stevens, 18 Misc. Rep. 112, 113, 41 N. Y. Supp. 39; R. L. Association v. Kellogg, 141 N. Y. 348, 355, 36 N. E. 326.

It seems clear, then, that the property came into the ownership of Coburn in exactly the same condition that it passed to Lalor from Lenox. Coburn, to raise money to complete his purchase, subdivided the premises into 11 lots and mortgaged each by a separate mortgage to the North American Life Insurance Company, so that the lots now owned by the plaintiff and defendant, respectively, were covered by distinct mortgages. Neither of these mortgages contained any reference to the restrictive covenant in the original deed. However, as Coburn could get no higher title than that which Lalor held, he could not enlarge his ownership in the premises by merely omitting a reference to this restriction, which was contained in the deed from which the title descended, and was, therefore, record notice to all who became interested in the premises. These two mortgages appear to have remained unpaid and unforeclosed until the year 1879, when they were both foreclosed. The lot now owned by the plaintiff was sold by the referee in foreclosure to one Mary A. Moore, who at the time was the owner of the equity of redemption, and the deed to her followed the language of the mortgage, containing no reference to the restrictive clause. The lot now owned by the defendant was sold by the referee to one Artemas H. Holmes, who was the then owner of the equity of redemption, and the deed was in substance the same as that under which the plaintiff's predecessor took title. By mesne conveyances from Mr. Holmes, who was the purchaser of the defendant's property, the title passed to one Jacob Tallman in the year 1887. Neither the deed from Mr. Holmes nor any of the intermediate deeds, down to the one which conveyed to Tallman, contained any reference to the Lenox restrictions; but, when Tallman came to take his warranty deed, it was made "subject to the covenants against nuisances and as to buildings contained in a certain deed made by James Lenox to William Lalor, dated 10th August, 1870, and recorded in the office of the Register aforesaid," etc. The defendant takes by mesne conveyances from Tallman; no further mention of the restrictive covenant appearing in any of the intermediate conveyances. The plaintiff's title is derived by deed from Mrs. Moore by full-covenant warranty deed, containing no reference to the restrictive covenant.

It appears that while the entire plot was in the possession of Coburn 11 private residences were constructed upon the premises, and

that they have been occupied as such private residences down to the present time, except that three of the original houses have been torn down and replaced by superior structures, still conforming to the requirements of the restrictive covenant in the original deed. This is a practical construction of the deed. Every purchaser must be deemed to have purchased with reference to the condition as it existed at the time of the transaction, and at all times both the plaintiff and defendant had notice of the fact that this was a residential block, and the deed from which they derive title, and which was duly recorded, told them at all times that only buildings of a like character could be erected upon any of these eleven lots. Each must be presumed, therefore, to have purchased only the right to erect and maintain a first-class private residence upon his lot, and, as no one of them could gain any higher right, each one of them has an equitable right to insist that no one of them shall disregard the conditions. Lenox, in selling the premises in 1870, exacted, as he had a right to do, a covenant restricting the use of the premises. It is conceded that it was contemplated that the property should be cut up into building lots for private residences, and this purpose was fully carried out, and, in the contemplation of equity, every purchaser of one of these lots thus limited took the right to enforce the same restriction against his neighbor. It does not do to say that it was a right reserved alone to the original grantor; for this would make the rights of purchasers in good faith to depend upon the mere caprice of Lenox. One might be permitted to do any of the prohibited things, while all the others might be deprived of the beneficial use of their property by reason of such acts. As we have already indicated, the law presumes that such restrictions are made for the benefit of the grantor's adjacent property, and, from all that appears in the record, Lenox may own all of the property in that neighborhood outside of the block, or he may have owned the same at the time of making the deed, and by subsequent conveyances may have ceased to have any interest in the enforcement of the covenant; but that is no reason why one who has in good faith purchased and maintained a first-class private residence should be deprived of the right to insist that his neighbor, who has no higher right, should be bound by the same covenant.

There is no evidence in this case which would warrant the conclusion that the character of the locality had so changed as to make it inequitable to enforce this covenant against the defendant. The plainly avowed purpose of the change is to enable the defendant to secure higher rentals for a business house than she can secure in its present form, and thus to get what neither she nor any of her predecessors in title from Lenox ever bargained and paid for. We think, as against the plaintiff in this action, she has no such right, and that the judgment of the court at Special Term is in harmony with the authorities controlling within this jurisdiction.

The judgment appealed from should be affirmed, with costs.

PATTERSON, P. J., concurs.