MORRILL REALTY CORPORATION, Appellant, v. RAYON HOLDING CORPORATION, Respondent.

(Argued June 10, 1930; decided July 8, 1930.)

*Morris Hillquit* for appellant. The premises to be conveyed under the contract of sale between the parties hereto are subject to the restrictions created by the Murray Hill agreement. (*Schoonmaker* v. *Heckscher,* 171 App. Div. 149; 218 N. Y. 722; *People ex rel. McLaughlin* v. *Police Commrs.,* 174 N. Y. 450; *Campbell* v. *New York Evening Post,* 219 App. Div. 169; *Wilson* v. *Ford,* 209 N. Y. 186; *French* v. *Carhart,* 1 N. Y. 96; *McLean* v. *Woolworth Co.,* 204 App. Div. 118; *Porter* v. *Denny,* 170 App. Div. 546; *Deeves* v. *Constable,* 87 App. Div. 352.) The effect of the references to the Murray Hill agreement in the numerous deeds in the chain of defendant's title was to charge the property with the restrictions set forth in the said agreement. (*Goodhue* v. *Cameron,* 142 App. Div. 470; *Williams* v. *Hewitt,* 57 Wash. 62; *Korn* v. *Campbell,* 119 App. Div. 401; *Title Guarantee & Trust Co.* v. *Fallon,* 101 App. Div. 187; *Matter of Oakes,* 248 N. Y. 280.) The property in question is still legally included within the residence district as established by the building zone resolution adopted by the Board of Estimate and Apportionment of the city of New York on July 25, 1916. The attempted inclusion of the said property in the retail district established by the Board of Estimate and Apportionment by resolution of April 18, 1929, is illegal and void. (*Melita* v. *Nolan,* 126

Misc. Rep. 345; *Palmer* v. *Mann*, 206 App. Div. 484; *Village of Carthage* v. *Frederick*, 122 N. Y. 268; *Rochester* v. *Simpson*, 133 N. Y. 414; *Buffalo* v. *New York, L. E. & W. R. R. Co.*, 152 N. Y. 27; *Crayton* v. *Larrabe*, 220 N. Y. 493; *New York* v. *Hyatt*, 3 E. D. Smith, 156; *Matter of Snowdown*, 12 Cal. App. 521; *Muther* v. *Capps*, 38 Cal. App. 721; *St. Louis* v. *Union Dairy*, 213 Mo. 148; *St. Louis* v. *Klausmeyer*, 213 Mo. 119; *Polinsky* v. *People*, 11 Hun, 390; 73 N. Y. 65; *Brooklyn* v. *Toynbee*, 31 Barb. 282; *Erie R. R. Co.* v. *Paterson*, 79 N. J. L. 512; *N. Y. R. R. Co.* v. *Paterson*, 79 N. J. L. 601; *Hicks* v. *Long Branch*, 69 N. J. L. 300; *Baker* v. *Courts*, 194 Ky. 260; *Armatage* v. *Fisher*, 74 Hun, 167.)

*Edwin DeT. Bechtel* and *Leslie D. Dawson* for Murray Hill Association, Inc., *amicus curiæ*. The protests filed with the Board of Estimate and Apportionment were sufficient to defeat the resolution of April 18, 1929. (*Matter of Melita* v. *Nolan*, 126 Misc. Rep. 345; *Matter of 40th St. & Park Ave., Inc.*, v. *Walker*, 133 Misc. Rep. 907; *Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288.) The premises on the westerly side of Madison avenue between Thirty-sixth and Thirty-seventh streets are subject to the Murray Hill restrictive agreement. (*Schoonmaker* v. *Heckscher*, 218 N. Y. 722; *Goodhue* v. *Cameron*, 142 App. Div. 470; *Trustees* v. *Lynch*, 70 N. Y. 440; *Cromwell* v. *American Bible Society*, 202 App. Div. 625.)

*David Vorhaus, Moses H. Grossman, Louis J. Vorhaus, George L. Allin, Philip S. Dean* and *Joshua Bernstein* for respondent. The premises were neither originally subject to, nor have they since had imposed upon them, the Murray Hill covenant. (*Schoonmaker* v. *Heckscher*, 171 App. Div. 149; *Van Duyn* v. *Chase & Co.*, 149 Iowa, 222; *Korn* v. *Campbell*, 119 App. Div. 401; 192 N. Y. 490; *Percival* v. *Williams*, 82 Vt. 531; *Matter of Oakes*, 248 N. Y. 280; *Title Guarantee & Trust Co.* v. *Fallon*, 101

App. Div. 187; *Goodhue* v. *Cameron*, 142 App. Div. 470.) The covenants imposed by Murray in his deed to Paine, and referred to in various deeds in the chain of title, have been extinguished and merged by the common ownership of the defendant of all premises burdened or benefited by such covenants. The objection of the purchaser that the property is still subject to such covenants is untenable. (*Korn* v. *Campbell*, 192 N. Y. 490; *Schoonmaker* v. *Heckscher*, 171 App. Div. 151; 218 N. Y. 722.) The retail zone resolution is a valid enactment. (*Smith* v. *Helmar*, 7 Barb. 416; *People* v. *Calder*, 153 Misc. Rep. 724; *Day* v. *Stetson*, 8 Me. 365; *Pechner* v. *Phœnix Ins. Co.*, 65 N. Y. 195; *Solomon* v. *Vallette*, 152 N. Y. 147; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380.) Unanimous vote of the Board of Estimate and Apportionment was unnecessary. (*Beach* v. *Jenkins*, 174 App. Div. 813; *Des Moines* v. *Dorr*, 31 Iowa, 89; *Justices of Bedfordshire* v. *Commissioners of Bedford*, 7 Exch. 658.)

*Arthur J. W. Hilly, Corporation Counsel* (*William T. Kennedy* of counsel), for City of New York, *amicus curiæ.*

*Louis I. Reichner* for Thirty-fourth Street Midtown Association et al., *amici curiæ.* The Board of Estimate and Apportionment complied with section 242-b of the charter of the city of New York as amended by the Legislature. (*Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313; *Matter of Stubbs* v. *Adamson*, 220 N. Y. 459.)

*Jeremiah T. Mahoney, Herbert H. Maass, Vincent L. Leibell* and *Monroe L. Friedman* for 40th St. & Park Ave., Inc., *amicus curiæ.*

KELLOGG, J. The plaintiff contracted to buy and the defendant agreed to sell the block frontage on the westerly side of Madison avenue, between East Thirty-sixth and East Thirty-seventh streets in New York city, having a width of 197 feet and six inches on Madison, 143 feet on

Thirty-seventh street and 95 feet on Thirty-sixth street. The contract expressed the understanding of the parties to be that the purchase was made by the plaintiff for the purpose of erecting a business building upon the premises. It contained a covenant by the seller that the premises might be used for business purposes, subject to restrictions provided for retail business districts by an amendment to the Zoning Resolution adopted by the Board of Estimate and Apportionment on April 18, 1929. The plaintiff refused to accept a conveyance of the premises on three grounds: (1) That the premises were subject to the restrictions of a covenant known as the Murray Hill covenant; (2) that they were subject to the restrictions of a covenant known as the Paine covenant; (3) that the premises might not be used for retail business purposes under the original Zoning Resolution, and that the redistricting of the premises under the amendment, to constitute a part of a newly created retail district, was illegal. In this action, which the plaintiff brings to recover the down payment made, it urges that the title offered was defective for the three reasons stated when it rejected the tendered conveyance.

(1) The Murray Hill covenant was contained in an agreement executed on the 22d of February, 1847, by the owners of several contiguous parcels of land in New York city, and bound the owners and all subsequent grantees not to erect other than dwelling houses of brick or stone, private stables of brick or stone, or churches on premises owned by the parties within an area described. The premises were in part described as " divers lots and parcels of ground situate in the 18th Ward of the City of New York, lying on each side of 34, 35, 36 and 37th Streets and on the south side of 38th Street lying between Madison Avenue on the westerly side and Lexington Avenue on the easterly * * *." Manifestly, a description of lots between Madison and Lexington having a frontage on certain named streets is not inclusive of lots

on the same streets to the west of Madison or to the east of Lexington. Equally clear is it that a description of lots on the cross streets is not comprehensive of lots not touching the streets which are situate on the avenues. Hence to the descriptive words quoted there were appended the following: " and also on said Madison Avenue, Lexington and Fourth Avenue as the same are particularly laid down on a map in the Office of the Register in and for the City and County of New York, entitled Map of the Murray Hill Estate, made by Joseph F. Bridges, City Surveyor, February 25, 1839." It has been held that the added clause was qualified by the words of the precedent clause bounding the premises on the east and west, so that the covenant was tied to those lots only which lay between the east line of Madison and the west line of Lexington. (*Schoonmaker* v. *Heckscher*, 171 App. Div. 148; affd., 218 N. Y. 722.) We see no reason now to doubt the correctness of that decision. Indeed, independently of the decision, we are presently of the opinion that the Murray Hill covenant imposed no restrictions upon premises situate on the west side of Madison avenue, as are the premises constituting the subject of this action.

In the year 1853 the property now in litigation was owned by John R. Murray. In that year he conveyed lots, constituting a major portion of the premises, to John Paine. The deed contained the following clause: " subject nevertheless to the covenants and provisions contained in a certain instrument in writing * * * recorded * * * in Liber 485 of Conveyances, page 594, March 2, 1847." The instrument referred to was the Murray Hill agreement. In 1855 Murray conveyed to Robert M. Oliphant the lot adjoining the Paine lots on the south. In 1856 Murray conveyed to the trustees of St. Patrick's Cathedral the remaining lot on the corner of Thirty-sixth street. The last two conveyances contained " subject " clauses similar to that contained in the

Paine conveyance. In the defendant's chain of title, whereby its ownership of the entire frontage is linked up with the ownership of these several grantees, there are many deeds containing similar clauses. It is urged that the defendant is thereby estopped from claiming that the Murray Hill covenant does not extend to the lands in suit.

In *Bennett* v. *Bates* (94 N. Y. 354, 370) it was said: "The authorities hold where a grantee takes a conveyance of land, subject to the payment of a mortgage existing thereon, although he comes, under no personal liability to pay the same, is not at liberty to contest the existence or validity of such mortgage." In that case the question was whether a grantee might dispute the existence of a debt expressly acknowledged to be owing by a mortgage securing its payment, "subject" to which the grantee took his conveyance. In terms the obligation was admitted by the mortgage; in terms the lien of the mortgage was made to attach to the identical lands accepted by the grantee. The principle stated is expressly based upon the postulate that the grantee takes the lands subject to the payment of a "mortgage existing thereon." Of the principle enunciated it was said in *Purdy* v. *Coar* (109 N. Y. 448, 453): "The pith of the doctrine is that the circumstances of the purchase amount to an admission of the validity and lien of the outstanding incumbrance." Now, the principle of estoppel merely forbids that a claimed right, admitted to be valid by act or word of the person against whom or whose property it runs, shall by that person be disputed. In other words, an estoppel does not originate a legal right; it merely forbids the denial of a right claimed otherwise to have arisen. If, in the *Bennett* case, the mortgage to which the grant was expressed to be made subject, had failed to describe the granted property, the assertion of an existing lien, which the grantee might not deny, would not have been made, so that no estoppel would have

arisen. In the instance before us the Murray Hill covenant, by its terms excluded from its operation the premises in litigation. Consequently, if the " subject " clauses, contained in conveyances made subsequently to the agreement, operated to bind the granted property to restrictions such as were contained therein, they could not so have operated through estoppel; they must have been effectual, if at all, as new impositions of like restrictions upon lands not originally bound by the covenant. Self-evidently there was no thought in the mind of any grantor or grantee to impose new restrictions by covenants presently made.

In *Korn* v. *Campbell* (119 App. Div. 401) the court considered the question whether a conveyance to one Coburn, " subject to " certain restrictions contained in a prior deed, operated to reimpose restrictions which had been extinguished. SCOTT, J., writing for the court, said: " The insertion of this clause in the deed to Coburn did not, however, necessarily amount to the reimposition of the restrictions upon the property, or imply an agreement on Coburn's part that he would observe the covenant." The decision was affirmed by this court in 192 New York, 490. In *Percival* v. *Williams* (82 Vt. 531, 547) there was considered a case where reservations of easements, to which a grant was made " subject," had been extinguished when the grant was executed. The court said of the parties: " They did not intend to give the reservation, subject to which the conveyance was made, any force or meaning beyond that given by the deed containing it, whatever such force or meaning might be (see *Wolveridge* v. *Steward*, 1 Cr. & M. 644, 30 E. C. L. 521; *Johnson* v. *Webster*, 4 D. G. M. & G. 474; 53 Eng. Ch. 371), and the various grantees including the orator were bound by that deed only to the extent of its obligation." In *Goodhue* v. *Cameron* (142 App. Div. 470) the precise question now presented was under consideration. Within the area, to various properties in which the Murray Hill

covenant was tied, there was a lot, numbered 53, at the southwest corner of Thirty-fourth street and Madison avenue, which was not owned by any party to the agreement creating the covenant. It was part of an abandoned highway known as " Middle Road," title to which was then in the city of New York. A portion of this lot was conveyed to Mary Murray in August, 1847, six months after the execution of the Murray Hill covenant. In the year 1851 Mary Murray conveyed to John R. Murray the premises thus conveyed to her and in addition a lot immediately adjoining on the east which had a frontage on Thirty-fourth street of twenty feet one inch in width. In 1853 John R. Murray conveyed the land thus granted to Martin Zabriskie, " subject, nevertheless, to the covenants and provisions " contained in the Murray Hill agreement. The opinion of Charles F. Brown, referee, who decided the case in the first instance, is printed in the Appellate Division reports. He found as follows: " I, therefore, find that the part of the defendant's property which is subject to the restriction is a lot in the rear thereof twenty feet one inch wide on 34th Street and thirty-four feet six inches wide on the north line of the defendants' property." It thus appears that the lot conveyed by the city to Mary Murray, by her to John R. Murray, and by him to Martin Zabrisbie " subject to " the covenant, was held to be free from the restrictions imposed thereby. The decision was affirmed by the Appellate Division. Although the case was not brought to this court, we feel that the rule of property which it enunciated was correct, and should not be disturbed.

We hold that the restrictions created by the Murray Hill agreement do not bind the premises in litigation.

(2) In the year 1853 John R. Murray, being the owner of all the premises in litigation, as we have noted, conveyed a large part of the Madison avenue frontage to John Paine. The deed contained the following: " And it is hereby mutually covenanted and agreed that neither

of the parties hereto, their heirs or assigns, owning the several lots of land on the west side of Madison Avenue between Thirty-sixth and Thirty-seventh Street shall or will erect upon such lots within forty feet of the Westerly line of said Avenue any buildings, except first class dwelling houses of brick or stone of not less than Twenty-five feet in width on the Avenue. And further that not less than five feet off the front of each of the said lots of land last mentioned shall forever be and remain an open space or court and shall not at any time hereafter be appropriated for or occupied by any edifice, building or wall nor be in any manner built upon or obstructed otherwise than by the necessary steps for entrance, platforms, pedestals, and iron fences or railings connected therewith and enclosing the same and the foundations and copings upon which such iron fences or railings may be placed." This is the so-called Paine covenant. All the lands on Madison avenue between Thirty-sixth and Thirty-seventh streets, then owned by the parties to the conveyance, are now owned by this defendant. The single ownership has extinguished the restrictions imposed by the covenant contained in the grant. (*Korn* v. *Campbell, supra.*)

We hold that the Paine covenant does not incumber the title to the premises in question.

(3) In the year 1916 the Board of Estimate and Apportionment of New York city, acting under the authority of section 242-b of the Greater New York Charter, added by chapter 470 of the Laws of 1914, adopted a Building Zone Resolution, providing for the division of the city into three use districts, to wit: (1) Residence districts; (2) business districts, and (3) unrestricted districts. In residence districts no buildings might be erected other than those to be occupied as dwellings, hotels, clubs, churches, libraries, museums, charitable institutions, hospitals and the like. In business districts buildings might be used for business purposes of a certain character,

including manufacturing, provided that not more than twenty-five per cent of the total floor space of a building were so employed, except that a space equal to the area of the lot might in every case be thus used. Unrestricted districts were to be what the name implies. Upon the passage of the resolution the Board adopted a use district map, which divided the city into the three use districts, and apportioned to each district certain city territory. The property in litigation, *i. e.*, the westerly side of Madison avenue, between East Thirty-sixth and East Thirty-seventh streets, to a depth of 100 feet west of the westerly line of the avenue, was included in a residence district. Until April, 1929, the property continued to be in such a district.

When section 242-b was originally added to the charter in the year 1914, it contained no provision for the redistricting of the city to accord with its changing needs. The omission was supplied in the year 1916 by chapter 497 of the laws of that year which added to section 242-b the following: " The board may from time to time after public notice and hearing amend, supplement or change said regulations or districts but in case a protest against a proposed amendment, supplement or change be presented, duly signed and acknowledged by the owners of twenty per centum or more of the frontage proposed to be altered, or by the owners of twenty per centum of the frontage immediately in the rear thereof, or by the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by a unanimous vote of the board."

The original Zoning Resolution, as we have noted, permitted manufacturing up to twenty-five per cent of the total floor space of any building in a business district. In factories so much space is required for offices, showrooms, storage, shipping, halls, stairways and the like that more than twenty-five per cent of the floor space

is seldom required for strictly manufacturing purposes. Therefore, manufacturing might be extensively done in a business district. As time went on factories began to encroach upon the territory previously devoted to retail business. The need of new districting to protect stores and shops in a district set apart for strictly retail business was increasingly felt. Finally, on April 18, 1929, the Board of Estimate and Apportionment provided for the creation of a new form of district, to be known as the " Retail District," by adding to the Zoning Resolution a new section as follows: " In a retail district the same regulations and restrictions shall apply as are provided for business districts except that no manufacturing or treatment of products shall be carried on other than such as are incidental to the conduct of a retail business conducted on the premises, or such other manufacturing as is now permitted in a business district, provided that in such other manufacturing no more than five per cent (5%) of the total floor space of the building is so used."

On the same day the Board, by a non-unanimous vote, passed a resolution assigning to the new retail district a substantial area of the city, extending from Twenty-third street on the south to the center line of the blocks between Fiftieth and Fifty-first streets on the north, and including some sixty city blocks. All of the block bounded west by Fifth avenue, east by Madison avenue, north by Thirty-seventh street and south by Thirty-sixth was thus assigned. This, of course, included the premises now in litigation. The resolution, if effective, accomplished two things. It removed premises, formerly in a practically unrestricted business district, to a district wholly restricted to retail business. It assigned premises, formerly in a residence district, to a less restricted retail business district. It is urged that the protests filed required a unanimous vote for the adoption of the resolution, and, therefore, that the premises in suit were never lawfully assigned to the new retail district.

It is apparent that the power of the Board of Estimate

and Apportionment, conferred by the amendatory provisions, added in 1916 to section 242-b of the Greater New York Charter by the Legislature of the State, to make alterations in the districting of the city, could in no wise have been impaired by any self-denying resolution which the Board might itself have adopted. For the power of the Board we must look to the statute and not glance elsewhere. The Board is empowered to "amend, supplement and change said regulations or districts," but this must be "after public notice and hearing." It is not denied that the notice was given and the hearing afforded. However, the Board's action must be by unanimous vote, in case there has been filed a protest against "a proposed amendment, supplement or change" which is signed by "the owners of twenty per centum or more of the frontage proposed to be altered," or "the owners of twenty per centum of the frontage immediately in the rear thereof" or "the owners of twenty per centum of the frontage directly opposite the frontage proposed to be altered." No distinction is made in the statute between an alteration "proposed" by the Board itself or one "proposed" by an interested petitioner. An "amendment, supplement or change," therefore, is "proposed" when a resolution to that end is offered by a member of the Board for passage by it. In this instance, the resolution proposed and passed, provided for the inclusion in a retail district, of a large area, consisting of many city blocks. There is no pretense that twenty per cent of the frontage included in this area, of the frontage opposite thereto or of the frontage in the rear thereof, made a protest against the adoption of the resolution. On the face of things, therefore, no need of a unanimous vote was present, and the resolution was lawfully adopted.

It is said that a "frontage proposed to be altered" is the front which any block presents to a particular street or avenue; that a "frontage directly opposite" or "a frontage immediately in the rear thereof" must

be determined accordingly. From this it is argued either that the resolution was illegal in that the consideration of separate " frontages," in the sense attributed to the word, was not thereby presented to the Board; or, that the resolution, although omnibus in character, must be regarded as a composite of numberless propositions severally presented and adopted. If the former be regarded as correct, then the whole resolution is void; if the latter, then it is void in so far as the property involved herein is concerned, since all the owners of the frontage opposite, to wit, the frontage on the east side of Madison avenue between Thirty-sixth and Thirty-seventh streets protested against the alteration. Now, every property fronting upon an avenue, which is inclusive of corner lots, such as the property in suit, or every property on a street similarly inclusive, must have a frontage both upon the avenue and upon the street. Therefore, the argument, in part drawn from the use of the singular noun " frontage," that all districting must be done severally by the block frontage upon a particular avenue or street, since any frontage upon the one necessarily includes a frontage upon the other, utterly fails. If the argument be modified, to present the proposition that districting must be done severally with an entire block as the largest unit, we think that the application of such a principle might prove unfortunate. The owners of twenty per centum of city block frontage might prevent the passage of a proposed districting resolution. Thus, there might result a districting of the city, with business, retail, residence and unrestricted districts scattered about in the pattern of a checkerboard. Besides, the principal reason advanced against the districting of large areas, containing many blocks, is, that there is no " frontage immediately in the rear," the owners of which may file a protest as provided by the section. The same argument runs against a districting by separate blocks, since one block, like an aggregate of many, is unattended by such a frontage. There is nothing contained in section 242-b

of the City Charter which in words or by implication limits the power of the Board, either in districting or redistricting the city, so that it must proceed by separate resolution to zone block by block, or otherwise by areas of restricted size. We think that the Legislature never intended thus to limit the powers of the Board; that, on the contrary, it was the legislative intent that the Board should have power to redistrict substantial and unrestricted areas, so that a proper readjustment of the district lines as originally laid down by it might be achieved.

We think that the premises in question were properly assigned to the new retail district, and that retail business may be conducted thereupon as covenanted.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.