KATE S. RANSOM, as Executrix, etc., of WASHINGTON H. RANSOM, Deceased, Plaintiff, *v.* HARRY A. SHAEFFER, Defendant.

Supreme Court, Niagara County, October 13, 1934.

*George C. Lewis,* for the plaintiff.

*J. Carl Fogle,* for the defendant.

CHARLES B. WHEELER, Official Referee. This action is one to enforce the specific performance of a contract by which the plaintiff agreed to sell and the defendant to purchase certain beach property located on Lake Ontario at Olcott, N. Y.

Several defenses are interposed by the defendant which will be discussed by the referee.

The contract in question provided for the sale of " certain beach property west of the Government Pier at Olcott, New York, described as Blocks D E F & G in a map of Ransom Addition No. 2 of Olcott, New York, made by Julius F. Frashee, C. E. October 17th, 1921, and filed in the Town Clerk's Office at the Town of Newfane, Niagara County, New York, *being all of the interest of the late Washington H. Ransom in the lands and premises north of Beach Street of said map and lying between the Government Pier on the east and Jackson Street on the west."*

One of the defenses interposed is that Washington H. Ransom never had a good title to the lots sold, because the legal title to the land extended only to the high-water mark of Lake Ontario. The evidence is that the level of the water of the lake varies and there has been a difference in the past of from four to five feet between extreme high and extreme low water; and that when the lake level has been at its highest, much of the beach is covered by the waters of the lake, and on the theory that Ransom's title ran only to the high-water line a great part of the lots shown on the map referred to was so covered and his title so failed.

The map referred to was introduced in evidence. The map shows a large and considerable tract of land other than the particular lots in question, with streets subdividing the tract. In all the lots shown on the map, other than the so-called beach lots have their frontage and depth in feet given, but on beach lots D, E, F and G no distances are given from Beach street to Lake Ontario. This

is significant as such distance varied from year to year owing to the changing level of Lake Ontario, and as to these lots no definite distance from Beach street to Lake Ontario could be given.

Now the contract between the parties describes what is sold and to be conveyed simply as " *all of the interest of the late Washington H. Ransom in the lands and premises north of Beach Street of said map and lying between the Government Pier on the east and Jackson Street on the west.*" Distances and quantity were evidently purposely omitted owing to the well-known fact that the width of the beach varied by the changing height of Lake Ontario, and possibly too because there was some question as to whether the legal title to the land stopped at high-water mark of Lake Ontario.

The referee thinks it quite plain it was only the intention of the plaintiff to sell and of the defendant to buy such interest as the late Washington H. Ransom had in the beach property and no more whether his title ran to high- or low-water line. The defendant was bound to take and pay for such interest no matter where the line of high-water mark ran. There could be no deception practiced for the defendant is and has been for years a resident of Olcott and perfectly familiar with the property in question. In fact, he owned a bath house patronized by those wishing to bathe in the lake. He introduced in evidence a photograph of the beach with a boat on waters overflowing a part of it taken two years before he made the contract to buy. So he knew just what he was buying when the contract was made, which was simply Ransom's interest in the beach property without any reference to metes and bounds.

We, therefore, are of the opinion the defense of want of title not well taken.

It is, however, an interesting question whether Ransom's title is bounded by the high-water line or runs to the waters of the lake, whether high or low.

The view above expressed is fortified by the clause in the contract declaring: " First party shall not be held responsible for any encroachments of high water or the results thereof."

As to whether or not Ransom had title in fee to the land between high-water mark and low-water mark of Lake Ontario may be the subject of much discussion.

It is well established by the decisions of the courts of this State that grants of land bounded by waters where the tide rises and falls only carries the legal title to high-water mark. (*Wheeler* v. *Spinola*, 54 N. Y. 377; *People ex rel. Burnham* v. *Jones*, 112 id. 597.)

However, Lake Ontario is not a body of water where the tide rises and falls. The difference in the level of the waters of the lake

is caused by the seasonal weather, by heavy rains prevailing over the sections of the country drained by the Great Lakes, or by prolonged droughts affecting streams finding the lakes. Consequently the heights of levels in the Great Lakes varies greatly from the uniform level of the ocean only affected by the rise and fall of tides.

For these reasons the courts of this State have drawn a distinction in the rule of law to be applied to lands on tidal waters, and land on inland lakes where no tide rises or falls.

The comparatively recent case of *Stewart* v. *Turney* (237 N. Y. 117) related to the title of certain lands on the east shore of Cayuga lake, a body of water some thirty-six miles long by one to three wide. The grant in question was of " Farm Lot 86, Late Cayuga Reservation which lies on the east side of Cayuga lake." The map of the reservation referred to shows this lot abutting on the lake.

Stretching eastward from the water was a beach of gravel and boulders some thirty feet in width. The gravel beach was for much of the year free from water, but when the lake is high the beach is overflowed so that in extreme high water small boats can pass over it. The action was for trespass by the defendant entering on the beach, and the question to be decided was whether the plaintiff had title to the beach, which depended on the meaning and effect of the grant from the State. After discussing various decisions, the court held that under the grant by the State, the grantee took to low-water mark, and the plaintiff acquired whatever title was acquired by the original grantee.

Practically the same conditions obtain on the shores of Lake Ontario as on Cayuga lake, and the referee is unable to see why the same rule of law should not apply to grants of land on the shores of Lake Ontario as apply to lakes like Cayuga. The only difference is in the size of the two lakes, but that one principle cannot be controlling. We, therefore, hold the title of Ransom ran to low-water mark on the shores of Lake Ontario. As previously stated, as we have interpreted the contract between the parties to this action, we do not deem it necessary to sustain the plaintiff's right to recovery that as matter of fact or law Ransom had title in fee to low-water mark, but should the referee be in error in his interpretation of the contract, then the rule of law laid down in *Stewart* v. *Turney*, we think, controls and the plea of failure of title in Ransom is not well taken.

The defendant, among other things, contends the title of Washington H. Ransom is not marketable on account of an alleged restriction against building on the lands sold between Beach street and the waters of Lake Ontario. It appears that by deed dated

November 8, 1921, Washington H. Ransom conveyed to one James H. Henderson certain lands then owned by him, which deed contained a covenant by the grantor that for the term of fifteen years "no building shall be erected or placed upon the land between said Beach Street lots and the waters of Lake Ontario," etc.

However, by deed dated January 1, 1929, the said James H. Henderson and wife conveyed to the defendant Harry A. Shaeffer the very premises described in the deed to Henderson, and the defendant thus became the owner of the fee of the premises so described.

If we assume this last conveyance carried with it the restrictions contained in the deed from Ransom to Henderson, then Shaeffer was the only party who could invoke and enforce the restrictions, and it seems idle to argue that when Shaeffer agreed to buy the Ransom interest in the beach property, such restrictions prevented his obtaining a marketable title. By a conveyance from the Ransom estate the defendant thus obtained a title which no one could disturb by reason of any such restriction. It may be said the restrictions of the covenant became merged in the title. (*Korn* v. *Campbell*, 119 App. Div. 401; *Post* v. *Weil*, 115 N. Y. 361.)

In any event, we think the interpretation placed by us on the contract between the parties holding it was intended to sell and convey such interest as Ransom had in the beach property precludes the defendant asserting this particular defense just discussed.

For the same reason we are also of the opinion that the claim as to a difference in the width of a street running to the water obtains. In our opinion, the streets as laid down in map No. 2 controlled. This is the only map formally adopted by the town authorities.

A further defense is interposed that there never was a formal tender of a deed of conveyance. Such a deed was prepared for delivery, but the defendant requested time for an examination of title which was given, and then raised objections to title, which are asserted by answer. The defendant alleges no readiness to perform on his part, but refuses. Under such circumstances, we are of the opinion this objection is not available. We are of the opinion the plaintiff is entitled to the relief asked.

A formal decision may be drawn accordingly.

So ordered, with costs to the plaintiff.