Mario J. Cariello, J.
The decision of this court dated October 17, 1972 is hereby withdrawn and the following substituted.
*96 In this action to restrain defendants from violating alleged covenants and restrictions, defendants move for summary judgment upon the ground the cause of action has no merit. Plaintiffs cross-move for summary judgment. For the purposes of defendants’ motion, the court will assume the truth of the following material facts alleged by plaintiffs:
In 1925, Block 148, which includes the parcels of property owned by plaintiffs and defendants, was owned by the City' Housing Corporation (hereinafter referred to as the “ Corporation ”). In furtherance of a uniform plan for the development of the entire block, the Corporation executed and recorded a Declaration of Covenants, Restrictions, Agreements, Easements and Maintenance Charges (hereinafter referred to as the ‘ ‘ Declaration”). The block was developed according to the declared scheme. A portion in the rear of each lot was dedicated to the common use of all the property owners on the block, forming a central court. Fences were prohibited. The Declaration recites that the pertinent covenants, restrictions and easements expire on January 1, 1965. It contains no provision for an extension.
In March 1965, 62 out of 73 of the then owners of parcels on the block executed an agreement, duly recorded, which was termed an Agreement of Extension of Easements and Restrictions (hereinafter referred to as the “ Extension Agreement ”). It provides for an extension of the covenants, restrictions and easements contained in the 1925 Declaration.
Defendants Serrano and Wandzilak have erected fences upon their separate parcels, obstructing the central court and its use in common. Concededly, if their respective properties are bound by the easements and restrictions contained in the 1925 Declaration and in the Extension Agreement, the fencing off of their portions of the common court is a violation of the terms of the covenants.
The 1925 Declaration is within the first classification of covenants and restrictions recognized in the case of Korn v. Campbell (192 N. Y. 490): those which are entered into with the design to carry out a general scheme for the improvement or development of real property. A common grantor may declare and implement a uniform scheme of restrictions and easements for the benefit of all of the lots within a specified area. Characteristic of an enforceable uniform scheme is its universality and reciprocity. The consideration to each lot owner for the imposition of the restrictions upon his lot is that the same restrictions are imposed upon the lots of other similarly situated. Korn v. Campbell, 192 N. Y. 490, supra.) Although certain of the ease *97 ments and restrictions imposed by the 1925 Declaration were stated to be perpetual, the covenants, restrictions and easements in issue were not perpetual, but of limited duration, and thus ceased to exist with the expiration of the time limited for their duration, January 1,1965. (Mowbray-Tuttle Corp. v. Freistadt, 101 N. Y. S. 2d 806.) On that date, respective portions of the surrounding parcels originally dedicated to the common use were freed of their negative easements and the parcels relieved of the burdens of the restrictions claimed herein. (See Mowbray-Tuttle Corp. v. Freistadt, 101 N. Y. S. 2d 806, supra; Arena v. Prisco, 81 N. Y. S. 2d 627.)
Neither defendant’s parcel is bound by the pertinent expired covenants of the Declaration. That the deed to the Serranos made the property “ subject to ” these expired covenants, easements and restrictions does not operate to revive and reimpose them. (Morrill Realty Corp. v. Rayon Holding Corp., 254 N. Y. 268; Dubrowsky v. Benedict, 67 Misc 2d 189.) The parcels are bound by the covenants claimed only if the Extension Agreement operates to reimpose them. The original covenants had expired by the time of the execution of the Extension Agreement. That agreement is directed toward the creation of new covenants by the reimposition of the terms of the concluded covenants. This agreement between adjoining landowners is of the type that falls within the third class of covenants enunciated in Korn v. Campbell (192 N. Y. 490, supra). Adjoining landowners may mutually covenant to bind their respective properties for their reciprocal benefit. The restrictions placed upon each produce a corresponding benefit to the other. (Korn v. Campbell, 192 N. Y. 490, supra-, Trustees of Columbia Coll. v. Lynch, 70 N. Y. 440.) An agreement imposing a burden on property may be executed only by one who holds title to the property. (Oak Lane Realty Corp. v. Trinity Evangelical Lutheran Church, 13 Mise 2d 708, affd. 7 A D 2d 1007, affd. 7 N Y 2d 984.) Nonconsenting landowners ,are thus not bound by restrictions imposed and easements granted by the other landowners.
Whether the parties to the Extension Agreement intended to bind their properties with new covenants and restrictions is a question of contract construction to be determined, if possible, from the language employed in the agreement. The construction of an unambiguous written contract is a question of law for the courts and may properly be determined on a motion for summary judgment. (Stone v. Goodson, 8 N Y 2d 8; Janos v. Peck, 21 A D 2d 529, affd. 15 N Y 2d 509.) The contract must be construed in light of the objectives and purposes sought to be *98 accomplished. It is the intention of the parties, not as it existed in their minds, hut as it was expressed in the language used, that is the paramount consideration. (Clark v. Devoe, 124 N. Y, 120; Battista v. Pine Is. Park Assn., 28 A D 2d 714.)
Several principles of law create the structure within which a covenant respecting real property is to be construed. The law favors the free and unobstructed use of property (Premium Point Park Assn. v. Polar Bar, 306 N. Y. 507; Blair v. Ladue, 14 A D 2d 373; Cook v. Papa, 18 Misc 2d 871) and will not hold that property is burdened unless by clear, direct and unmistakable language the owner has expressed his intention to so burden it. (Clark v. Devoe, 124 N. Y. 120, supra; Tubb v. Rolling Ridge, 28 Misc 2d 532.)
Applying the principles thus enunciated, the court will look to the Extension Agreement in its entirety. It is termed an Agreement of Extension of Easements and Restrictions ”. In its introductory paragraph it recites, that the block upon which the covenants are to be extended has been ‘ ‘ developed and improved in accordance with a certain plan and design pursuant to the terms and conditions of a certain ‘ Declaration of Easements and Restrictions by the City Housing Corporation ’, dated April 14, 1925 ”. The purpose of the Extension Agreement is ‘ to preserve the easements, restrictions and other rights accruing to the aforesaid property owners from the aforesaid Declaration ”. The stated purpose of the Declaration was to create a neighborhood scheme that would inure to the benefit of the entire block.
The Extension Agreement does not set forth the particular covenants it seeks to extend. It refers to the Declaration for specification: all of the terms, covenants, conditions, easements, restrictions and provisions contained in the aforementioned Declaration, which, under the terms thereof, expire on January 1, 1965, be, and they hereby are, extended as covenants running with the land ”. Although the agreement states that it shall be binding and shall enure to the benefit of only those property owners who become parties to this agreement, their heirs, representatives, successors or assigns ”, it does not specifically state whether all or how many of the lot owners on the block must sign before the agreement is to take effect as a binding restriction. A determination of this question may be made by reference to what the parties intended to accomplish, manifestly, the preservation of the common mall'.
The conception of the common court and its implementation were dependent upon the universal imposition by the common *99 grantor of negative easements upon every parcel on the block. Were any parcelholder free to enclose his portion of the area comprising the court, the natural line and flow of the mall would be disrupted and its existence as an area for use in common frustrated. Its very nature would be changed by the permissible obstruction of any portion of it. The neighborhood scheme would lack uniformity.
It is in consideration of the whole common court that the parties to the Extension Agreement agreed to burden their parcels. The burdens they sought to extend were universal burdens. The parties could not accomplish their reimposition without the consent of all the landowners. The benefit they sought to preserve was the continued existence of the common mall, the usage of which they had benefitted from since 1925. They could not achieve this benefit without the consent of all the landowners. For the agreement to be effective for the accomplishment of the intended result, the continuation of the neighborhood scheme, it was essential that all of the then owners of property within the block consent to the reimposition of the restrictions and easements.
Accordingly, the court holds that the lack of assent on the part of some of the then owners of property on the block prevented the “Extension Agreement” from ever attaining validity as a binding restriction upon the property of those persons who did properly sign it.
For the foregoing reasons, the property of neither of the defendants is bound by the restrictions claimed by the plaintiffs and the obstructions by the defendants cannot be enjoined. As to defendants Serrano, however, their property is not bound for an additional reason. Neither the Serranos nor any predecessor in title to their property ever became party to the Extension Agreement. Plaintiffs claim that the predecessor in title to the Serranos’ property, Hannah Callahan, signed the agreement, and offer as proof a copy of the Extension Agreement signed and recorded two years subsequent to the execution of the original Extension Agreement. The bottom of this copy of the 1965 agreement has space for two separate signatures, one for the property owners ’ .association, the other for that of an individual property owner. The signature of Hannah Callahan appears in the space reserved for the property owners’ association and is followed by the title President. Her signature is written as that of a corporate officer, signing in her corporate capacity. The signature of a corporate officer as agent for the corporation does not bind the agent individually. (Salzman Sign *100 Co. v. Beck, 10 N Y 2d 63; Hofbauer v. Liss, 18 A D 2d 672.) There is no signature in the space reserved for the individual property owner. On its face the instrument was executed by only one party, the property owners ’ association.
Accordingly, the motions by defendants Serrano and Wandzilak for summary judgment are granted. Plaintiffs’ cross motion is denied.