HAMILTON M. ROSS, RELATOR, v. WILLIAM A. MILLER, CITY CLERK AND CITY MANAGER, WILSON BROWER, MAYOR OF THE CITY OF CLIFTON, AND THE MUNICIPAL COUNCIL OF THE CITY OF CLIFTON, RESPONDENTS.

Submitted March 22, 1935—Decided April 18, 1935.

Before Justice HEHER, at the Passaic Circuit.

For the relator, *Charles S. Silberman.*

For the respondents, *John C. Barbour.*

HEHER, J. Relator seeks a peremptory or alternative writ of *mandamus,* commanding respondents to "declare" relator "duly, legally appointed and elected to the municipal council of the city of Clifton," and to administer to him the customary oath of office.

Passing the question of the propriety, in the circumstances here presented, of the remedy thus invoked, it is clear that relator's title to the office in question has not been established; and, that being so, he has not made out a case for relief in any form.

These are the essential facts: The city of Clifton exercises its governmental functions under the provisions of chapter 113 of the laws of 1923, termed the "Municipal Manager Form of Government act." *Pamph. L.* 1923, *p.* 217. It is in the class of municipalities for which a municipal council of seven members is provided therein. The requisite number were duly elected. On February 5th, 1935, there were two vacancies, created by death, in the council membership. At a meeting of the council held on that day, attended by the five remaining members, three nominations were made to fill the vacancies—Messrs. Shershin, Sigler and the relator. Shershin received the votes of all five members of the council; and he was thereupon declared elected to fill one of the vacancies. Relator polled three votes, and Sigler two votes; but neither was accorded membership in the body, upon the theory, presumably, that the concurrence of a majority of the entire membership of the council prescribed by law was requisite to appointment. On the hypothesis that a majority of the councilmanic body as then constituted was empowered to fill a vacancy, relator, through counsel, at a meeting of the body held on February 27th, 1935, demanded that he be declared elected to membership, and sworn. This demand was refused; hence, this application for a *mandamus* to compel such action.

The decisive question, therefore, is whether a vacancy can be legally filled by a majority of the existing membership. This is a question of statutory construction; and it must be resolved against relator.

Section 713 of the act ordains that "vacancies in the

municipal council, excepting such as are created by recall, shall be filled temporarily by the municipal council by appointing a properly qualified citizen thereto, who shall serve until a successor can be elected at the next election at which members of the general assembly are elected." *Pamph. L.* 1923, *p.* 228. There is no requirement in this or any other section as to the number of members of the body whose concurrence is essential to fill a vacancy. Section 711 of the act (page 227) provides that *"a majority of all the members* of the municipal council shall constitute a *quorum,* and the affirmative vote of a *majority of all the members shall be necessary to take any action* or pass any measure, except as otherwise provided in this act."

The reason and spirit of a statute control in its interpretation. In the ascertainment of the legislative purpose, the old law upon the subject is to be considered. In a leading English case, it was declared that, in general, these four things were to be taken into consideration: "(1) What was the common law before the making of the act? (2) What was the mischief and defect for which the common law did not provide? (3) What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth? And (4) the true reason of the remedy." *Heydon's Case,* 3 *Coke* 7a; 14 *Eng. Rul. Cas.* 816. It is, of course, to be presumed that the legislature is familiar with the common law. And there is a presumption, also, that a word or phrase is used in the same sense throughout the statute. *Lewis' Sutherland Statutory Construction,* § 399.

At common law, a majority of all the members of a municipal governing body constituted a quorum; and in the event of vacancy a quorum consisted of a majority of the remaining members. *Hutchinson* v. *Belmar,* 61 *N. J. L.* 443; *affirmed,* 62 *Id.* 450; *Tappan* v. *Long Branch, &c., Commission,* 59 *Id.* 371; *Mueller* v. *Egg Harbor City,* 55 *Id.* 245; *Cadmus* v. *Farr,* 47 *Id.* 208. And it was likewise the rule at common law that a majority of a quorum was empowered to fill a vacancy, or take any other action within its proper sphere. *Housman* v. *Earle,* 98 *Id.* 379; *Cadmus* v. *Farr, supra;* 19 *R. C. L.* 890; 43 *C. J.* 506-7.

Did the legislature here intend to modify the common law rule? We find such an intention adequately expressed. The language employed is persuasive of a design and purpose to make the approval of a majority of the full membership prescribed by law, rather than of the qualified, sitting members for the time being, a *sine qua non* of action by the governing body in all cases except one not here involved. It is fairly to be presumed that, in the use of the phrase "a majority of all the members" of the councilmanic body, both in relation to the number constituting a quorum and in prescribing the requisites of valid action, the legislative concept was the full membership commanded by the act, and not a reduced body, however occurring. While it is the settled rule that a statute in derogation of the common law must be strictly construed, it is axiomatic that this rule will not be permitted to defeat the obvious purpose of the legislature, or lessen the scope plainly intended to be given to the measure. *Jamison* v. *Encarnacion,* 281 *U. S.* 635; 50 *S. Ct.* 440; 74 *L. Ed.* 1082. Unquestionably, it was not the intention to declare the common law rule; the phraseology is not appropriate to that end. We are required to assume that if the legislature had in mind the common law rule, *i. e.,* a majority of a quorum, it would have chosen appropriate and unambiguous language to express that intent. And there is nothing to indicate that, in respect of the clause at issue, anything less than a full membership was contemplated. The provision for the immediate filling of a vacancy, by temporary appointment, lends emphasis to this view.

But any doubt as to the legislative design in this regard is resolved by the application of another well established principle in aid of the construction of legislative enactments. Where words in a statute have received a judicial construction, the legislature will be deemed to have used them in the sense that had been thus ascribed to them. *Lynch* v. *Long Branch,* 111 *N. J. L.* 148. "A judicial construction of a statute of long standing has force as a precedent from the presumption that the legislature is aware of it, and its silence a tacit admission that such construction is correct. The re-enactment of a statute after a judicial construction of its

meaning is to be regarded as a legislative adoption of the statute as thus construed. So, where the terms of a statute which has received a judicial construction are used in a later statute, * * * that construction is to be given to the later statute; for if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effectuate that intention." *Lewis' Sutherland Statutory Construction*, § 499. And the same principle is applicable to a practical construction that has the sanction of long and consistent usage, especially where, as here, it is a legislative construction of a somewhat similar clause in our organic law. In such circumstances, the inference is inescapable that the legislature employed the language in that sense.

The provision of our constitution (Article IV, section IV, paragraph 6), "that no bill or joint resolution shall pass unless there be a *majority of all the members* of each body personally present and agreeing thereto," has been practically construed, by the legislature itself, to require the concurrence of a majority of the entire membership of each house provided by law. And in *Schermerhorn* v. *Jersey City*, 53 *N. J. L.* 112, this court dealt with a statute enabling the governing bodies of cities to change the ward lines and boundaries therein, providing "that three-fourths of all the members of the legislative body shall agree to the passage of" the ordinance; and it was held that this provision meant "the complete board, the full membership, not a reduced number of members as they are at the time of voting." This view was also expressed in *Stanton* v. *Hoboken*, 52 *Id.* 88, although not necessary to a decision of the issue presented. And it was reiterated in *Mueller* v. *Egg Harbor City, supra.*

Relator urges that such a construction may "hamper the function of government;" and it is pointed out that in the case of four vacancies, created by death, "the city must cease to function," and that the "control of the council by the minority" would be preferable to a cessation of all function by the governing body. Without conceding that this would effect a total paralysis of governmental function, as insisted by relator, the same result would be possible no matter what

construction is placed upon the statute. It would clearly do violence to the legislative purpose and policy to hold that if the membership were so reduced to one, the surviving member could fill all vacancies. Such a legislative purpose will not be implied; it must be explicitly declared. And while we are dealing with possibilities, it should not be overlooked that the entire membership might quite conceivably be vacated before any of the vacancies were filled. It is far more reasonable to conclude that the legislature regarded the provision for the immediate filling of a vacancy, by temporary appointment, as altogether adequate to guard against the lack of a quorum of the entire membership provided by law, resulting from vacancies, and thus to ensure the continuity of government by the council. The legislature undoubtedly regarded the contingency of vacancies in the full membership of the councilmanic body at one time as a possibility too remote to be considered in the reckoning of human affairs; and it is reasonable to suppose that it considered the lack of a quorum occurring by reason of vacancies as equally remote.

The case of *Housman* v. *Earle, supra,* does not lead to a contrary result. There section 3 of the Walsh act, providing that "a majority of all the members shall be necessary to adopt any motion, resolution or ordinance, or pass any measure," was under consideration. Mr. Justice Kalisch held that this was not in terms applicable to the filling of a vacancy, and that therefore, as to such action, the common law rule applied. As pointed out, the act here in question provides that the affirmative vote of a majority of all the members shall be necessary "to take any action or pass any measure." It is significant that the legislature, in the drafting of the Municipal Manager act, thus enlarged upon this provision of the Walsh act. We must regard it as a purposeful change in phraseology; and it leads to the conclusion that the intention was to provide for the affirmative vote of a majority of the entire membership prescribed by law to give vitality to any action taken by that body. The common law rule is therefore not applicable.

Rule discharged, but without costs.