54 N.J. Super. 384 (1959)
148 A.2d 841
CHARLES E. BRUNDAGE AND EDNA T. BRUNDAGE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF RANDOLPH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; FRANK THORBURN, BUILDING INSPECTOR OF THE TOWNSHIP OF RANDOLPH; AND THE PLANNING BOARD OF THE TOWNSHIP OF RANDOLPH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1959.
Decided March 9, 1959.
*386 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Milton A. Dauber argued the cause for plaintiffs-appellants (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Thomas L. Morrissey, of counsel; Messrs. Morrissey and Dauber, on the brief).
Mr. Harry L. Sears argued the cause for defendants-respondents (Messrs. Young & Sears, attorneys; Mr. Sears, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The validity of two zoning ordinances enacted by Randolph Township, Morris County, during 1957 *387 was challenged in this action in lieu of prerogative writs brought in the Superior Court, Law Division. Plaintiffs, taxpayers and property owners of the township, appeal from the judgment of that court dismissing the original and amended complaints. Defendants are the municipality, its building inspector, and the planning board.

I.
Randolph Township is an essentially rural and relatively sparsely settled area in the highlands of central Morris County. It consists of about 22 square miles in which live an estimated 7,000 to 8,000 persons. Since 1950 the population has virtually doubled. The township is primarily residential, and there has been a development of homes in all its sections. While commercial and industrial development is presently minimal, residential growth is expected to continue. Mount Freedom, located in the south central part, is the township's principal village.
One commercial activity, which has a considerable effect on its economy and zoning problems and which distinguishes the township from its neighbors, is the prosperous and long-standing summer resort industry, located principally in the Mount Freedom area. In addition to 9 or 10 hotels, there are 40 or 50 bungalow colonies, each consisting of from 4 or 5 to as many as 40 or 50 small buildings under common ownership, designed for rental on a seasonal basis to families for summer housekeeping use. With the hotels, these colonies attract over 3,000 people to the community during the summer months. The bungalows contain two, three or four rooms; some accommodate two families, but most only one. The owners provide recreation buildings, swimming pools, playfields, day camps, and the like. As the trial judge, who in the course of the trial inspected the entire township, said in his opinion,
"* * * living is essentially outdoors. * * * [T]he basic commodity sold is fresh air at a high elevation. The installations are generally quite close together and many are on quite small lots. *388 They range from one extreme to the other in quality. With few exceptions, the bungalows are not designed in any way for living except during the warm summer months. Their origin long antedates the first zoning ordinance in 1938. It should be noted that in Mount Freedom these resort uses are all interspersed among a good number of single family dwellings and retail business establishments."
The first zoning ordinance was enacted in 1938. The bungalows in the Mount Freedom area were located in what was made the business zone. By a major amendment adopted in 1952, three classes of residence zones and two classes of business zones (neighborhood and general) were established. While the general business zone included "hotels" and "other business uses which serve the general public," the apparent effect of the 1952 amendment was to make bungalow colonies a nonconforming use, not permitted in the residential zones and at least not expressly permitted in the general business zone. It appears that most of the colonies (aside from those in the Mount Freedom area) are now in zones which were fixed as residential under the 1938 ordinance or which became residential prior to 1957. Some of the bungalow colonies were established prior to 1938 and are therefore lawful nonconforming uses. Those which have begun operations since 1938, however, were, under the then-existing ordinances, illegal in their inception. In short, prior to 1957 there was no ordinance authorizing a bungalow colony as such.
On February 7, 1957 an amendatory zoning ordinance, approved beforehand by the planning board, was adopted by the township committee, the legislative body of the municipality. In pertinent part, this ordinance created a B-3 resort zone in four separate areas where bungalow colony uses would be permitted. The principal B-3 zone was in and about the Village of Mount Freedom. The other three were widely separated, individual tracts. Two of these, respectively located at the northeasterly and westerly portions of the township, are not presently under attack. The remaining one, consisting of the property of one Nathan Kaufman, is attacked by plaintiffs as illegal spot zoning. *389 The "Kaufman zone" is, in effect, an island surrounded by a large area zoned for and presently developing along the lines of one-family residential use. It is approximately one-half to one mile to the north of the central part of the larger Mount Freedom B-3 resort zone. The February 1957 ordinance merely established the areas in which bungalow colony expansion was to be permitted, but did not establish use regulations. On November 14, 1957 the township committee adopted another ordinance, also under attack here, setting forth use regulations and various lot-size, depth, yard, height, and living-space requirements for the resort zones.

II.
Plaintiffs instituted this action on the general theory that the 1957 ordinances were not in harmony with the proper objectives of municipal zoning as set forth in R.S. 40:55-32. Plaintiffs contended that the creation of scattered resort zones was done to accommodate special private interests at the expense of depreciating existing property values, and that it interfered with the most appropriate use of those areas as residential property. After hearing oral testimony for eight days and examining a voluminous record of exhibits consisting of maps, photographs, minutes of official bodies, reports, and pamphlets, the trial judge rendered an opinion disposing of many subsidiary points involved in this litigation and, on the basic issues, concluding in the main that the zoning ordinances in question were reasonably designed to further the advancement of the community as a social, economic and political unit.
Plaintiffs argue that the judgment sustaining the ordinances must be reversed for four main reasons: (1) the Kaufman resort tract is an illegal spot zone; (2) the bungalow use regulations contained in the November 1957 ordinance are invalid; (3) section V(G) requiring planning board approval for bungalow plots is void for lack of standards, and partial invalidity renders invalid the entire November ordinance; and (4) the zoning in the Shongum *390 Lake and Sussex Ridge areas, reducing the planning board's recommended minimum residential lot-size requirements from one acre and one-half acre to one-half acre and one-third acre, respectively, is void for want of compliance with N.J.S.A. 40:55-35. The necessary factual material will be recited in our consideration of each point.

III.
Plaintiffs launch a threefold attack upon the February 1957 ordinance insofar as it zoned the Kaufman tract as an area within which bungalow colonies would be permitted. They claim that the carving out of the Kaufman island for resort use, when surrounded by land zoned for residential use, is not zoning "in accordance with a comprehensive plan" as required by R.S. 40:55-32, but rather spot zoning actuated by an unwillingness on the part of local officials personally to incur Mr. Kaufman's displeasure. Secondly, it is argued that the Kaufman tract is unattractive and will depreciate property values in the surrounding residential areas. Finally, plaintiffs reason from such cases as Speakman v. Borough of North Plainfield, 8 N.J. 250 (1951), and Borough of Cresskill v. Borough of Dumont, 15 N.J. 238 (1954), that the ordinance, insofar as it validates a specific illegal nonconforming use located upon a single tract of land, must fail since it in effect grants either a variance, the power to authorize which rests with the local legislative body on recommendation from the board of adjustment (not from the planning board as here), or an exception, which is also to be approved by the board of adjustment in authorized instances. See N.J.S.A. 40:55-39; Rain or Shine Box Lunch Co. v. Board of Adjustment, Newark, 53 N.J. Super. 252, 258-59 (App. Div. 1958); Borough of North Plainfield v. Perone, 54 N.J. Super. 1, 8 (App. Div. 1959). Randolph Township has a board of adjustment.
The trial judged ruled as to the first facet of this argument:
*391 "[T]he municipality, having determined within its province to legalize for zoning purposes, so to speak, the industry, is bound to recognize the actual use and extent thereof at the time of enactment as far as zone area is concerned. That comports with one of the requirements of R.S. 40:55-32 that `regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses.' To create zones for this use leaving out substantial parts of the actual use would open such an enactment to a charge of unlawful discrimination."
We find this ruling, as well as what we said in Bartlett v. Township of Middletown, 51 N.J. Super. 239 (App. Div.), certif. denied 28 N.J. 37 (1958), a complete answer to the contention that the inclusion of the Kaufman tract in the B-3 zone is spot zoning. There is now, and since the late 1930's has been, a large bungalow colony on Kaufman's tract. When zoning the lands immediately surrounding the existing colony, the municipal officials could conform their use either to that of the resort land or to that of the surrounding residential land. It chose the first alternative. While defendants' expert witness testified that he was not certain he would have made the same decision, he did say that it was a supportable and reasonable judgment. The decision to include the Kaufman tract was but a part of, and was consistent with, the municipality's basic determination to recognize and permit the growth of the resort industry. In such circumstances, the judiciary does not interfere. See also Kozesnik v. Montgomery Twp., 24 N.J. 154, 172 et seq. (1957); 8 McQuillin, Municipal Corporations (3d rev. ed. 1957), § 25.84, p. 193 et seq.
We turn to the point that the Kaufman tract is unattractive and will depreciate property values. The aesthetic challenge, however, must fail once it is considered that any other decision by the municipality as to the legal status of the bungalow colonies, e.g., leaving them as illegal or nonconforming uses, would in all probability cause the Kaufman tract to deteriorate to slum level. If it were impossible for Kaufman to expand and improve his property so as to compete with the other bungalow owners, the situation, *392 at least from an aesthetic standpoint, would worsen. The township committee could properly conclude that the solution to the problem lay in more exacting use regulations and building requirements. And the lowering of surrounding land values does not necessarily make the ordinance unreasonable. It is axiomatic that some property owners may have to forego the most profitable use of their land when a zoning plan adjusts conflicting interests and seeks to provide for the general welfare of the municipality. See, e.g., Clary v. Borough of Eatontown, 41 N.J. Super. 47, 64 (App. Div. 1956). We note that there is no testimony of an overriding collapse of land values in the township; the only claim is that lands contiguous to the resort zones will be adversely affected.
Nor do we agree with the proposition that there has been a usurpation of the functions committed by statute to the board of adjustment. The argument that a variance or an exception has in effect been granted to Kaufman is made only because his is a single-ownership tract. Had several persons owned it, there would be no question that the planning board and township committee could zone it as a resort area. The decision to include the Kaufman tract in the B-3 zone was made as part of a comprehensive re-zoning program, the design of which is not within the exclusive province of the board of adjustment. N.J.S.A. 40:55-35; 40:55-1.10 et seq. Cf. Kozesnik v. Montgomery Twp., supra, 24 N.J. at pp. 178-79.

IV.
Next, plaintiffs claim that the requirement contained in the November 1957 ordinance, 400 square feet as the minimum permissible floor space for a bungalow, is unreasonably small and inimical to the public health and welfare. Plaintiffs' main argument stems from a publication of the American Public Health Association which prescribes a minimum figure of approximately 1,350 square feet for healthful living. The township has a 1,350 square foot minimum for conventional dwellings.
*393 The cited publication is concerned with a normal year-round home; it does not distinguish between that and a summer resort residence. The trial judge determined that the failure to consider this distinction greatly impaired the value of the statistics. He found that plaintiffs had not sustained the burden of showing that 400 square feet was unreasonable.
We agree with the trial judge. The average size of bungalows now in existence is 400 square feet. Residents return year after year, indicating that the frayed nerves and neuroses predicted by plaintiffs' expert witness have not developed to an observable extent. There has been no evidence of sickness or epidemics, nor has there been any indication of excessive indoor accidents during the 20-30 years that the bungalow colonies have been in existence. Considering these facts, and convinced that 1,350 square feet was a completely unrealistic and Utopian requirement, aware that much of the seasonal residents' time was spent outdoors, and after examining publications which showed bungalows of even smaller dimensions, the township governing body concluded that the average existing size, 400 square feet, was an adequate requirement. The issue was fairly debatable, and, under these circumstances, the considered, legislative judgment of the local governing body must remain unimpaired. See, e.g., Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 416 (1952); Fanale v. Hasbrouck Heights, 26 N.J. 320, 327 (1958); Bartlett v. Township of Middletown, supra, 51 N.J. Super. at page 260.

V.
Plaintiffs further claim that the November bungalow use ordinance is void as an unconstitutional delegation of legislative power from the township committee to the planning board. Section V(C) of the ordinance provides that the planning board shall review bungalow colony or hotel plat plans from the standpoint of conformity to the standards set forth in the ordinance before a building permit may *394 be issued. This section is concededly valid. However, section V(G) reads:
"Before a building permit is issued for any use permitted in the zones mentioned in this section (Section V), a plat plan showing property lines, zone boundaries within 500 feet, building locations, advertising signs, access roads, parking and loading facilities, and stating the proposed use shall be submitted to the Planning Board for approval."
Plaintiffs' argument is that V(G) renders the entire ordinance invalid for lack of sufficient standards since it confers a generalized discretion upon the planning board to approve or disapprove a plat plan without reference to whether it complies with the terms of the ordinance, in addition to the power conferred in V(C) to approve or disapprove with reference to the terms of the ordinance.
The trial judge found that while "there might well be a question as to the validity of 5g (sic)," he was not required to pass upon it. He ruled that the specific provision in V(C) as to hotels and bungalows superseded the provision of V(G) which governed business and industrial uses generally. He was of the view that V(G) had no application to the resort areas and that, therefore, the board had no authority to deny any building permit for a bungalow or hotel which meets the standards of the ordinance.
This ruling cannot be sustained. Although V(G) is not found in that portion of the text of the ordinance which deals with bungalow colonies, it does in terms apply to the resort zone. Section V(G) is expressly applicable to "any use * * * mentioned in this section (Section V)" and the B-3 resort business zone is mentioned therein. Moreover, plaintiffs seek not only a determination as to the validity of the section as applied to the resort zone; we understand their challenge on this constitutional issue to have been made in their capacity as taxpayers aggrieved by an unlawful delegation of power to the planning board. If V(G) is invalid and the invalidity infects the entire ordinance, plaintiffs are entitled to such a determination, notwithstanding that V(G) involves no potential of unique *395 financial detriment to them in their capacity as property owners. Cf. Kozesnik v. Montgomery Twp., supra, 24 N.J. at p. 177.
Site plan approval may of course be delegated to the planning board. But there must be found in the ordinance some set of standards or conditions which a site plan must satisfy before warranting the approval or disapproval of that body. This much, at least, is required by the decisions in Kozesnik v. Montgomery Twp., supra, 24 N.J. at p. 184, and Newark Milk and Cream Co. v. Parsippany-Troy Hills Twp., 47 N.J. Super. 306, 310, 313, 332-333 (Law Div. 1957). "The mere requirement of the approval of particular administrative * * * officers does not spell out the standards * * *." Gross v. Allan, 37 N.J. Super. 262, 268 (App. Div. 1955). See also N.J.S.A. 40:55-1.14.
Thus viewed, section V(G) is patently invalid. It provides no standards at all to guide the planning board in the review of plat plans. Nor is it of any moment that the November ordinance itself contains comprehensive and detailed requirements and standards for the resort areas; the infirmity is in the fact that section V(G) confers upon the planning board the authority to approve or disapprove plat plans without reference to the bungalow colony controls projected by the ordinance itself.
There remains to consider whether the invalidity is limited to the provision under discussion or whether it vitiates the entire ordinance. It is a well settled principle that when a portion of a zoning ordinance is declared invalid the remainder will be left in force if such a course is consistent with the presumed intention of the municipal governing body, and if the remaining portion can operate as an integrated unit independent of the invalid portions. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 360-362, 36 A.L.R.2d 639, 651-652 (1953); H. Behlen & Bros., Inc. v. Town of Kearny, 31 N.J. Super. 30, 34 (App. Div. 1954); Gross v. Allan, supra, 37 N.J. Super. at page 269; 2 Sutherland, Statutory Construction (3d ed. 1943), § 2403, p. 176.
*396 We pause briefly to dispose of plaintiffs' suggestion that the testimony of individual members of the planning board be considered in relation to the question of whether the township governing body intended V(G) to be a separable provision. It is, of course, an established principle that the intent of the lawgiver is to be found in the language used. Burnson v. Evans, 137 N.J.L. 511, 514 (Sup. Ct. 1948); cf. 5 McQuillin, op. cit. supra, § 16.90, p. 321 et seq. Distinguish the situation where the issue is the reasonableness of the ordinance and such testimony is offered to establish the general zoning objectives and purposes of the ordinance bearing thereon. Clary v. Borough of Eatontown, supra, 41 N.J. Super. at page 71.
In our judgment, section V(G) is an obviously separable provision. An ordinance setting forth such detailed requirements and regulations cannot reasonably be construed as interdependent with a paragraph which permits the agency charged with its enforcement to ignore the other provisions. Moreover, in ascertaining the legislative intent, the special and specific provision in section V(C) that site plans for hotel and bungalow colony development be approved by the board if there is compliance with the terms of the ordinance would, in any event, prevail over the more general language of V(G). See, e.g., 6 McQuillin, op. cit. supra, § 20.57, p. 137. We discern a distinct effort on the part of the municipal officials, augured by the February ordinance and exhibited in this ordinance, to provide the minimum requirements for the resort business zone. There is such a "manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative." Washington Nat'l. Ins. Co. v. Board of Review, 1 N.J. 545, 556 (1949), quoted in Yanow v. Seven Oaks Park, Inc., supra, 11 N.J. at page 361.

VI.
Little need be said in relation to plaintiffs' fourth argument that the Sussex Ridge area, in the extreme southeast *397 corner of the township, should have been zoned for one-half acre tracts (instead of one-third acre), and that the Shongum Lake area, north of Sussex Ridge, should have been devoted to one-acre tracts (instead of one-half acre). At most, plaintiffs have demonstrated that there is an acceptable method of zoning these lands other than that chosen by the township.
The judgment sustaining the ordinances is, as modified, affirmed.