109 N.J. Super. 511 (1970)
264 A.2d 75
JAMES J. JOHNSON AND MARY B. JOHNSON, HIS WIFE, AND CURTIS DECKER AND THERESA DECKER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF MONTVILLE, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1970.
Decided April 9, 1970.
*515 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Jeffrey R. Lowe argued the cause for plaintiffs-appellants.
Mr. Harry L. Sears argued the cause for defendant-respondent (Messrs. Young & Sears, attorneys; Mr. Lawrence K. Eismeier, on the brief).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiffs challenge a judgment of the Law Division affirming the validity of an amendment to the zoning ordinance of the Township of Montville rezoning a tract of approximately 450 acres in that municipality from an A-3 residential zone to a D-3 industrial zone. They raise three points: (1) passage of the amendatory ordinance was by less than the two-thirds vote of the township committee required by N.J.S.A. 40:55-35; (2) the rezoning of the subject property was not in accordance with a comprehensive plan, and (3) it was unreasonable, arbitrary and capricious.
N.J.S.A. 40:55-35 provides, in pertinent part, as follows:
In case of a protest against such proposed change signed by the owners of twenty per centum (20%) or more either of the area of the lots or land included in such proposed change, or of the lots or land in the rear thereof extending one hundred feet therefrom, or of the lots or land on either side thereof or directly opposite thereto extending one hundred feet therefrom (exclusive of street space), such change shall not become effective except by the favorable vote of two-thirds of all the members of the governing body or board of public works of such municipality.
*516 The amendatory ordinance was passed by a vote of 3 to 1 with one member of the governing body abstaining.
The proposed industrial zone is located between the Rockaway River, which borders Montville on the west, and Change Bridge Road on the east. John Henry Drive and Van Riper Avenue, are two parallel streets serving a small A-3 residential area, extending into the new industrial zone in a generally westerly direction from Change Bridge Road. At the time the amendatory ordinance was up for consideration by the township committee a group of owners of property on John Henry Drive and Van Riper Avenue, including plaintiffs herein, filed a protest against its passage.
The manner in which plaintiffs arrive at the conclusion that a two-thirds vote of the governing body was necessary to passage of the amendatory ordinance is summarized in their factual and legal contentions contained in the pretrial order, as follows:
The plaintiffs contend that the north side of Van Riper Avenue and the south side of John Henry Drive, each constitute the rear or a side of the rezoned area within the purview of the statute and that if 20% of the lot owners or owners of 20% by area of all the lots on the north side of Van Riper Avenue or the south side of John Henry Drive, signed the petition, a 2/3's vote was required.
They assert (and it is not disputed) that four of the ten lot owners on the north side of Van Riper Avenue and six of the twelve lot owners on the south side of John Henry Drive signed the protest petition. They contend that this amounts to a protest by the owners of more than 20% of the lots or land in the rear or on a side of the new D-3 zone.
The core issue presented by plaintiffs' foregoing contention is whether each of the sides of this residential area which projects into the proposed industrial zone and adjoins it, amounts to a "rear" or "side" of the rezoned area within the purview of the statute. It appears from the zoning map that projecting into the proposed industrial zone, but not included therein, there are four additional nonindustrial *517 areas. Under the interpretation advanced by plaintiffs, if the owners of 20% of the property on any side of any one of these areas adjoining the new zone had filed a protest, a two-thirds vote would have been necessary to passage of the proposed rezoning.
Counsel cites no New Jersey case which has directly passed upon the issue and we know of none The protest provisions of the zoning statutes of other states take varying forms, so that we find no case directly dispositive. See Annotation, 4 A.L.R.2d 335 (1949); 1 Rathkopf, The Law of Zoning and Planning, c. 28, p. 28-1 et seq. (3d ed. 1969).
It appears clear, however, that the purpose of a provision requiring a greater than ordinary vote for a change of the zoning classification upon the filing of protests is to confer a measure of added protection against unwanted or ill-considered change upon those property owners who would be most affected by it. Farmer v. Meeker, 63 N.J. Super. 56, 64 (Law Div. 1960); Warren v. Borawski, 130 Conn. 676, 37 A.2d 364, 366 (Sup. Ct. Err. 1944). Thus, in computing the protest area to which the statute refers, it is to be measured by the area affected by the change. Rusnak v. Woodbridge Tp., 69 N.J. Super. 309, 314 (Law Div. 1961). See also Durrwachter v. Fair Lawn, 136 N.J.L. 314, 315 (Sup. Ct. 1947); Morrill Realty Corporation v. Rayon Holding Corporation, 254 N.Y. 268, 172 N.E. 494 (Ct. App. 1930).
Rusnak is extremely helpful in the resolution of the present issue. There an amendment to the zoning ordinance made a number of substantial zoning changes in the preexisting ordinance, including the rezoning of certain premises to "highway business." It was there held that, as a bare minimum, the entire district rezoned for highway business, of which the subject parcel was a part, was to be deemed the measure of the area with respect to the protest provisions of the statute, rather than individual plots or lots within that district such as was the subject property. *518 The court noted (69 N.J. Super., at 315) that "to hold otherwise would be to permit one lot or block (or its surrounding area) to control the passage of an amendment relating to an entire district."
Here, since there was only one change, the protest provisions of the statute are to be applied to the entire 450 acres affected by the ordinance. With relation to them, the statute permits a protest by the owners of land in the affected area, directly opposite, i.e., on the opposite side of the street with only the street intervening, Penny v. City of Durham, 249 N.C. 596, 107 S.E.2d 72 (Sup. Ct. 1959), to the rear, or on either side thereof. This contrasts with the statutes of a number of other states which combine the latter three groups as one, usually as the owners of contiguous or adjacent lands. Towle v. Nashua, 106 N.H. 394, 212 A.2d 204 (1965); Parsons v. Town of Wethersfield, 135 Conn. 24, 60 A.2d 771, 4 A.L.R.2d 330 (Sup. Ct. Err. 1948). While our statute does not define "rear" or "side," we construe the rear as meaning that portion of the periphery of the rezoned area opposite the main street frontage, and the sides as those portions of its periphery other than the front or rear.
We accordingly hold that neither the north side of Van Riper Avenue nor the south side of John Henry Drive qualified as a separate "side" or "rear" of the rezoned area within the purview of the statute. They were but a part of its continuous easterly boundary. At the least, the area of the land represented by the signers of the protest was to be compared with the total area of the lots or lands along the easterly boundary in determining whether the protest was such as to require a two-thirds vote of the governing body. So considered, it is clear that the protest did not include the required 20% of the area of the lots or lands. It follows that a two-thirds vote of the governing body was unnecessary and that the amendatory ordinance was properly adopted.
*519 In passing upon the validity of the ordinance the role of the courts is tightly circumscribed. Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957). There is a presumption that the municipal governing body acted reasonably and that the resulting legislation is valid. Ward v. Montgomery Tp., 28 N.J. 529, 539 (1959); Bartlett v. Middletown Tp., 51 N.J. Super. 239, 261 (App. Div. 1958), certif. den. 28 N.J. 37 (1958). We may not pass upon the wisdom of a particular ordinance, and debatable issues or questions of policy involved in its passage must be resolved in favor of the municipality. Vickers v. Tp. Comm. of Gloucester Tp., 37 N.J. 232, 242 (1962), appeal dis. 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963). We are not free to compare the views of the municipal governing body with our own and from this to determine what policy would be in the best interest of the community's residents. The wisdom of the course chosen by the governing body, as distinguished from its legality, is reviewable only at the polls. Kozesnik v. Montgomery Tp., supra, 24 N.J., at 167.
In sum, we may interfere only when the presumption in favor of the ordinance is overcome by an affirmative showing that it is arbitrary or unreasonable in the light of the standards prescribed by N.J.S.A. 40:55-32; Kozesnik v. Montgomery Tp., supra, 24 N.J., at 167. The burden of proof is upon plaintiffs. Fischer v. Bedminster Tp., 11 N.J. 194, 204 (1952). That burden is a heavy one. Ward v. Scott, 16 N.J. 16, 23 (1954); Vickers v. Tp. Comm. of Gloucester Tp., supra, 37 N.J., at 242; Ward v. Montgomery Tp., supra, 28 N.J., at 539.
Plaintiffs principally base their contention, that the action of the municipal governing body was unreasonable, arbitrary and capricious, upon the fact that it was not in accordance with a comprehensive plan and did not receive adequate consideration by the planning board.
The basic requisites of a comprehensive plan are set forth in Kozesnik v. Montgomery Tp., supra, as follows:
*520 There has been little judicial consideration of the precise attributes of a comprehensive plan. Haar, "In accordance with a Comprehensive Plan," supra (68 Harv. L. Rev. 1154). Our own decisions emphasize that its office is to prevent a capricious exercise of the legislative power resulting in haphazard or piecemeal zoning. Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250, 256 (1951); Raskin v. Town of Morristown, 21 N.J. 180, 198 (1956). Without venturing an exact definition, it may be said for present purposes that "plan" connotes an integrated product of a rational process and "comprehensive" requires something beyond a piecemeal approach, both to be revealed by the ordinance considered in relation to the physical facts and the purposes authorized by R.S. 40:55-32. Such being the requirements of a comprehensive plan, no reason is perceived why we should infer the Legislature intended by necessary implication that the comprehensive plan be portrayed in some physical form outside the ordinance itself. A plan may readily be revealed in an end-product  here the zoning ordinance  and no more is required by the statute.
The comprehensive plan embraced by an original zoning ordinance is of course mutable. If events should prove that the plan did not fully or correctly meet or anticipate the needs of the total community, amendments may be made, Hochberg v. Borough of Freehold, 40 N.J. Super. 276 (App. Div. 1956), and if the ordinance as thus amended reveals a comprehensive plan, it is of no moment that the new plan so revealed differs from the original one. [24 N.J., at 166-167]
Plaintiffs argue that the foregoing definition "has not proven satisfactory" and should be discarded. However, it has been described as "probably the best analysis of a comprehensive plan," 1 Rathkopf, The Law of Zoning and Planning, c. 9, p. 9-8 (3d ed. 1969), and has been uniformly followed in this State. Angermeir v. Sea Girt, 27 N.J. 298, 309 (1958); Gruber v. Mayor, etc. Raritan Tp., 39 N.J. 1, 11 (1962).
It follows that the comprehensive plan to which the municipal governing body is required to adhere here is not necessarily synonymous with a master plan for the township. On the contrary, the statutory requirements are fulfilled if the comprehensive plan is revealed by the zoning ordinance itself. Ward v. Montgomery Tp., supra, 28 N.J., at 536. The comprehensive plan continues mutable and if subsequent events or changed viewpoints as to the community's *521 needs prove that it does not fully or correctly meet or anticipate them, amendments to bring about this result may be made. Gruber v. Mayor, etc. Raritan Tp., supra, 39 N.J., at p. 11; Kozesnik v. Montgomery Tp., supra, 24 N.J., at 167. The fact that the ordinance as amended differs from the original one does not preclude it from constituting the comprehensive plan referred to in the statute. Kozesnik v. Montgomery Tp., supra, 24 N.J., at 167, Bartlett v. Middletown Tp., supra, 51 N.J. Super., at 268, 269.
From our review of the evidence we concur in the conclusion of the trial judge that the rezoning here in question was not the result of unreasonable and arbitrary action and that it was in accordance with a comprehensive plan for the township. Although the area in question had been zoned residential since 1961, its development had been relatively slow in comparison with other sections of the township. As time passed the call for additional industrial space, the need for additional ratables, and the advisability of rezoning the subject area for industrial use were discussed at a number of meetings between the township committee and the township's industrial commission. Thereafter, the meetings were enlarged to include members of the planning board. Eventually, it was proposed to set up an industrial zone of some 1700 acres in what would generally be the westerly area of the township. Later the present ordinance was introduced, restricting the change to the 450-acre area here in question. The rezoned area consists of continuous open low-lying land situated along the westerly border of the township, where the Rockaway River would serve as a natural buffer. It had been zoned industrial prior to 1961. It is directly adjacent to and between industrially zoned land. The rights-of-way of two high tension power lines, as well as a gas transmission line, pass through it. It abuts Change Bridge Road to the east and is in close proximity to major highways, both built and under construction.
*522 Plaintiffs urge that under the new ordinance their residential area will be surrounded on three sides by industrial uses, thus depreciating the value of their propperty for the benefit of the owners of the surrounding vacant land as well as other citizens of the township who might benefit, taxwise, from the rezoning. But the lowering of their values or the fact that surrounding owners would reap greater profits from the change does not necessarily render the ordinance unreasonable. Cf. Rockaway Estates v. Rockaway Tp., 38 N.J. Super. 468, 478 (App. Div. 1957). The owners of property adjacent to a district which is restricted to a particular use have no vested right to the continuation of that use when the public interest dictates otherwise. Cf. Jones v. Zoning Bd. of Adjustment, Long Beach Tp., 32 N.J. Super. 397, 405 (App. Div. 1954); Crecca v. Nucera, 52 N.J. Super. 279, 285 (App. Div. 1958). Plaintiffs were not entitled to insist upon maintenance of the area surrounding their homes as virgin land pending its development for residential purposes. When a zoning plan conformable to the general welfare of the community seeks to adjust conflicting interests some property owners may find the value of their land to be adversely affected. Cf. Brundage v. Randolph Tp., 54 N.J. Super. 384, 392 (App. Div. 1959), aff'd o.b. 30 N.J. 555 (1959). It was not sufficient for plaintiffs to show that the value of their property would be greater if they could be assured of the exclusion of a use more detrimental to them than the current one. They were required to show an abuse of discretion resulting in an unreasonable exercise of the zoning power of the municipal body. Cf. Fischer v. Bedminster Tp., supra, 11 N.J., at 206; Esso Standard Oil Co. v. Westfield, 33 N.J. Super. 324, 331 (App. Div. 1954). The Law Division found that they had failed to do so and the proofs were adequate to support that finding.
Plaintiffs urge that the planning board failed to give adequate consideration to the proposed amendment, thus rendering its enactment faulty. We disagree. N.J. *523 S.A. 40:55-35 requires that the proposed revision of the ordinance be first submitted to the planning board for "approval, disapproval or suggestions," and that the board have a reasonable time, not less than 30 days, for consideration and report. The board's resolution approving the proposed amendment satisfied the statutory requirement. While the resolution could have been supplemented by a detailed report setting forth the reasons for its approval, the failure to do so did not detract from the effectiveness of its action. Had the governing body desired more information it could readily have requested it. Presumably, the prior conferences and discussion between the governing body, the industrial commission and members of the planning board made this unnecessary.
We have reviewed the remaining points raised by plaintiffs and find them to be without merit. We find the rezoning to be internally consistent and rational. The prior recommendation or approval of the township's planning consultant was not a prerequisite to its adoption.
The judgment of the Law Division is accordingly affirmed.