801 A.2d 412 (2002)
353 N.J. Super. 57
MOUNTAIN HILL, LLC, Plaintiff-Respondent,
v.
MIDDLETOWN TOWNSHIP, Defendant-Appellant.
Heritage Hills Civic Association d/b/a as Concerned Citizens of Middletown, Plaintiff-Appellant,
v.
Township of Middletown, The Township Committee of the Township of Middletown, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 2002.
Decided July 5, 2002.
*413 Bernard M. Reilly, Red Bank, argued the cause for appellant Middletown Township (Dowd & Reilly, attorneys; Mr. Reilly, on the brief).
R.S. Gasiorowski argued the cause for appellant Heritage Hills Civic Association (Gasiorowski & Holobinko, attorneys; R.S. Gasiorowski, Christine A. Gasiorowski and Cathy S. Gasiorowski, on the brief).
Gary E. Fox argued the cause for respondent Mountain Hill, LLC (Fox & Gemma, attorneys; Mr. Fox and Amy R. Fratkin, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by WELLS, J.A.D.
Middletown Township, defendant, adopted an amended zoning ordinance over a protest by a vote of its five member governing body of three to one, with one member disqualifying himself. The protesting property owner, Mountain Hill, LLC, which had proposed a substantial development plan for the lands affected by the amendment sued Middletown, claiming in the first count of a four count complaint that the amendment did not garner the two-thirds majority of votes (four votes) required under N.J.S.A. 40:55D-63. Heritage Hills Civic Association (Heritage Hills), a group of homeowners in the vicinity of Mountain Hill's property and who opposed Mountain Hill's development plan, also sued Middletown on various theories relating to the ordinance among them that the ordinance had not been passed in accord with "statutory and municipal procedural requirements".
The two cases were consolidated in the trial court and were heard on motion for summary judgment. The judge in a written letter opinion agreed with Mountain Hill with respect to its first count on the issue of the number of votes required. She, therefore, granted summary judgment in favor of Mountain Hill, invalidated the ordinance and declared that judgment final. She then directed that the Heritage Hills suit "will proceed independently." Middletown filed an appeal. Notwithstanding the judge's order and contrary to the allegation in its complaint, Heritage Hills also appealed and filed a brief arguing, as did Middletown, that the ordinance *414 had been properly passed. We consolidated the appeals.[1]
Middletown Township is a large suburban municipality located in northeast Monmouth County. Middletown is governed by a five member committee pursuant to a special charter enacted by the Legislature in 1971. Mountain Hill, LLC is the owner and/or contract purchaser of a tract of approximately 135 acres, mostly vacant, with extensive frontage along northbound State Highway 35 in Middletown.
In 1993, the Middletown Township Planning Board adopted a master plan which recommended that a substantial portion of Mountain Hill's property be zoned for mixed uses. In 1994, the Township Committee re-zoned 85 acres of Mountain Hill's tract from business and industrial uses to the newly created PD (planned development) zone, which allowed mixed uses. The balance of the tract, 50 acres, remained in the M-1 (light industrial) zone. No amendments to the PD zone were enacted by the Township Committee from 1994 through 2000.
In September 2000, Mountain Hill filed an application with the Middletown Township Zoning Board seeking a use variance for the 50 acres still zoned industrial to allow Mountain Hill to develop a commercial/residential project on its entire 135 acre tract. The project was named the "Middletown Town Center." The proposal generated a substantial public controversy.
In March 2001, the Township Committee introduced Ordinance 2001-2632 which sought to amend and "down-zone" the existing PD zone, substantially reducing what Mountain Hill could build on its property. Mountain Hill filed a valid protest under N.J.S.A. 40:55D-63 objecting to the proposed zoning ordinance. At the June 4, 2001 Township meeting, the proposed ordinance was discussed. One of the members recused himself because of a conflict of interest. During the meeting, one of the four remaining members stated that "[f]or anything to pass here, it's going to require all four of us. All right. Just understand that. Anyone of us can block this whole ordinance." The Township's attorney did not comment on this statement. The ordinance was ultimately rejected by the Township Committee.
On June 18, 2001, the Township Committee proposed Ordinance 2001-2644, which also sought to "down-zone" the PD zone. Mountain Hill again filed a valid protest under N.J.S.A. 40:55D-63 objecting to the proposed ordinance. At the public hearing on July 2, 2001, the Township's attorney announced that one of the five committee members present, Mr. Brodsky, had "recused himself with regard to this matter, as he has in the past...." He then advised the Township Committee that "if a member has recused themselves, they are, in essence, resigned from the Committee for purposes of this application which means that effectively there are four, all the members of [the] governing body are four." Accordingly, he concluded that three affirmative votes was needed to carry the ordinance under N.J.S.A. 40:550-63. Following that discussion the vote was taken, with three votes in the affirmative and one vote in the negative, and the ordinance declared adopted.
The lawsuits followed. In her written decision concluding that Ordinance 2001-2664 had not been validly adopted because it had not received the required affirmative vote of "two-thirds of all the members *415 of the governing body," Judge Peskoe wrote:
Statutory construction principles require that this court be bound by the plain meaning of the text. "All the members of the governing body" does not mean "all members of the governing body who have no conflict and are qualified to vote." This court concludes, therefore, that "the number of persons who constitute all the members of the governing body" of Middletown Township is not reduced because of the disqualification of one of the Committee members. Two-thirds of the membership is to be computed in light of a five-member committee. To satisfy the statutory mandate, four affirmative votes are required.

....
Clearly, the statute is intended to protect property owners who are applicants or neighbors from casual changes in applicable ordinances. That is, ordinances that would effect "a change in the classification or boundaries of a zoning district." When such a change is proposed other than "recommended in a periodic general re-examination of the master plan by the planning board" notice of the hearing on the amendment is required to be given "to the owners of all real property ... within 200 feet in all directions of the boundaries of the district, and, in the case of a boundary change, in the State within 200 feet in all directions of the proposed new boundaries of the district which is the subject of the hearing." N.J.S.A. 40:55D-62.1.... The purpose of the statute is "to protect the interests of property owners in the stability and continuity of zoning regulations.["] Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 180, 411 A.2d 704 (1980).
There has been some suggestion that the "rule of necessity" should be applied here. That rule would allow a governing body member who has a conflict to participate in a vote, where a quorum would otherwise not be available. In this case, however, four members of the Township Committee were present. It was their failure to vote unanimously that prevented adoption of the ordinance.
Middletown Township raises the following point on appeal:
ORDINANCE 2001-2644 WAS VALIDLY ADOPTED BY 2/3 OF THE MEMBERS OF THE GOVERNING BODY.
We concur with Judge Peskoe's thoughtful application of the rules of statutory construction of N.J.S.A. 40:55D-63 and her analysis of the policy reasons supporting that construction. We, therefore, affirm her decision for substantially the reasons she gave in her opinion of December 11, 2001. We, nevertheless, deem her reasoning gains added authority upon consideration of the history of section 63 and older case law interpreting it. Analysis of that history lays to rest Middletown's strongest argument for its position that three votes was sufficient to adopt the proposed zoning amendment.
Shorn of its 1991 and 1995 amendments, which have no bearing on the present problem, the relevant and historic protest provision of the Municipal Land Use Law (MLUL) provides:
A protest against any proposed amendment or revision of a zoning ordinance may be filed with the municipal clerk, signed by the owners of 20% or more either of the area of the lots or land included in such proposed change, or of the lots or land extending 200 feet in all directions therefrom inclusive of street space, whether within or without the municipality. Such amendment or revision *416 shall not become effective following the filing of such protest except by the favorable vote of two-thirds of all the members of the governing body of the municipality.

[emphasis added.]
Middletown points out that while the phrase "all the members of the governing body" could mean that a two-thirds enhanced majority vote be determined based on a denominator of five, the fact is that the MLUL achieves that result elsewhere among its provisions by use of the expression "full authorized membership."[2] Because these sections require enhanced majority votes, as does section 63, Middletown argues that the use of a different expression in the protest provision signals an intent by the legislature to arrive at a different result. It urges that "all members of the governing body" in contrast to "full authorized membership" means all of those members present and qualified to vote on the proposed zoning amendment. According to this reasoning, three out of four votes is 75% and the amendment was validly adopted.
However, the legislative history of the statute provides another explanation for the difference in language:
The right to protest zoning changes has existed in New Jersey since 1928, L. 1928, c. 274, § 4, p. 1222. The protest provision in the Municipal Land Use Law of 1976 is essentially a continuation, with minor changes, of the 1948 amendment.... The protest provision in question has been in force, without any lapse, before and after the adoption of the Municipal Land Use Law.
[Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980).]
The 1948 protest provision, R.S. 40:55-35, the immediate statutory predecessor of N.J.S.A. 40:55D-63, read:
In case of a protest against such proposed change signed by the owners of twenty per centum (20%) or more ... of the area of the lots or land included in such proposed change, ... such change shall not become effective except by the favorable vote of two-thirds of all the members of the governing body ... of such municipality.
That provision had been construed by the Law Division in 1960 and by us in 1970. In Farmer v. Meeker, 63 N.J.Super. 56, 62-63, 163 A.2d 729 (Law Div.1960), the parties did not raise the issue of the meaning of the language "all the members of the governing body," rather the court focused on whether a valid protest had been raised. However, under the exact same factual scenario as presented here, the court (and the parties) assumed that the language meant two-thirds of the "full authorized membership": "The vote of the five-member township committee by which the amendment was declared adopted was three in favor, one opposed, and one abstaining. This is admittedly less than the two-thirds vote required by the statute in the event of a protest." Id. at 62, 163 A.2d 729.
The same factual scenario was also before the court in Johnson v. Township of Montville, 109 N.J.Super. 511, 516, 264 A.2d 75 (App.Div.1970). Though deciding the case on different grounds, the court and the parties assumed that a five member board's vote of three to one, with one member abstaining, would not have satisfied the protest provision of R.S. 40:55-35. Ibid.
*417 Perhaps no one in Farmer or Johnson raised the issue because it was made clear in Ross v. Miller, 115 N.J.L. 61, 178 A. 771 (Sup.Ct.1935), that the words "all the members" meant "full authorized membership." At issue in Ross was the interpretation of the Municipal Manager Form of Government Act of 1923. Id. at 62, 178 A. 771. Specifically, the dispute centered around the phrase, "a majority of all the members of the municipal council shall constitute a quorum, and the affirmative vote of a majority of all the members shall be necessary to take any action." Id. at 63, 178 A.771. The parties disputed whether the Legislature intended to modify the common law rule that once a quorum was established, only a majority of the quorum was needed to take any action. The court found that by using the phrase "affirmative vote of a majority of all the members shall be necessary to take any action," the Legislature expressed an intention to modify the common law rule. Id. at 64, 178 A. 771. That was because
[t]he language employed is persuasive of a design and purpose to make the approval of a majority of the full membership prescribed by law, rather than of the qualified, sitting members for the time being.... It is fairly to be presumed that, in the use of the phrase "a majority of all the members" of the councilmanic body, both in relation to the number constituting a quorum and in prescribing the requisites of valid action, the legislative concept was the full membership commanded by the act, and not a reduced body, however occurring....
But any doubt as to the legislative design in this regard is resolved by the application of another well established principle in aid of the construction of legislative enactments. Where words in a statute have received a judicial construction, the legislature will be deemed to have used then in the sense that had been ascribed to them. Lynch v. Long Branch, 111 N.J.L. 148, 167 A. 664.... And the same principle is applicable to a practical construction that has the sanction of long and consistent usage, especially where, as here, it is a legislative construction of a somewhat similar clause in our organic law. In such circumstances, the inference is inescapable that the legislature employed the language in that sense.
The provision of our constitution (Article IV, section IV, paragraph 6), "that no bill or joint resolution shall pass unless there be a majority of all the members of each body personally present and agreeing thereto," has been practically construed, by the legislature itself, to require the concurrence of a majority of the entire membership of each house provided by law. And in Schermerhorn v. Jersey City, 53 N.J.L. 112, 20 A. 829 [1890], this court dealt with a statute enabling the governing bodies of cities to change the ward lines and boundaries therein, providing "that three-fourths of all the members of the legislative body shall agree to the passage of" the ordinance; and it was held that this provision meant "the complete board, the full membership, not a reduced number of members as they are at the time of voting."

[Id. at C 64-65, 178 A. 771.]
Based on the above history, it is apparent that the difference in the language between N.J.S.A. 40:55D-63 and other MLUL provisions does not arise from an intent on the part of the Legislature to mean something other than "full authorized membership." Rather, the Legislature in 1976 re-enacted the language of protest provisions that had existed essentially unchanged since 1928 and whose meaning was well understood. We conclude *418 that the language, "all the members of the governing body," was the prior semantic formulation of that now in current use in the MLUL, "full authorized membership," and has been simply carried forward in section 63 without change.
"It is a principle of statutory construction that when the Legislature re-enacts a statute which as been judicially construed, it adopts that judicial interpretation." Walder, Sondak, Berkeley & Brogan v. Lipari, 300 N.J.Super. 67, 77, 692 A.2d 68 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 548 (1997). Thus,
[w]ords and provisions used in the original act or section are presumed to be used in the same sense in the amendment. Moreover, the legislature is presumed to know the prior construction of the original act, and if words or provisions in the act or section amended that had been previously construed are repeated in the amendment, it is held that the legislature adopted the prior construction of the word or provision.
[Norman J. Singer, 1A Sutherland Statutory Construction § 22:33, at 397-99 (West 6th ed.2002); see also Darel v. Pennsylvania Mfrs. Ass'n Ins. Co., 114 N.J. 416, 423, 555 A.2d 570 (1989) ("[P]rovisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law.")]
Under the forgoing principle of statutory construction, the section 63 language should be accorded the judicial construction given to it prior to its 1976 incorporation into the MLUL. Our cases interpreting that language have consistently found that it meant "the complete board, the full membership, not a reduced number of members as they are at the time of voting." Ross, supra, 115 N.J.L. at 65, 178 A. 771. Therefore, we are bound to construe the language in the same way, as the Legislature by retaining the "all of the members" language also retained the meaning given to it by the courts prior to the adoption of the MLUL.
Furthermore, we find that Middletown's interpretation is inconsistent with the purpose of N.J.S.A. 40:55D-63. The purpose of this provision of the MLUL "is to confer a measure of added protection against unwanted or ill-considered change upon those property owners who would be most affected by it." Johnson, supra, 109 N.J.Super. at 517, 264 A.2d 75; see also Levin, supra, 82 N.J. at 180, 411 A.2d 704; Friends of Dinky Woods v. Township of West Windsor, 291 N.J.Super. 325, 329, 677 A.2d 289 (Law Div.1996) (the purpose "is to protect the interests of property owners in the stability and continuity of zoning regulations.") This would suggest that the Legislature intended that, as a general rule, a protested zoning change should be more difficult to pass than an amended zoning ordinance, not subject to protest under N.J.S.A. 40:55D-62.
However, under Middletown's construction of the enhanced majority voting requirement, protesting property owners are not accorded any added protection flowing from their protest in situations where the number of voting members is reduced by deaths, absences or recusals.
Finally, it is clear that the rule of necessity has no application on the present facts because the ordinance could have passed if the four remaining members had all voted in the affirmative. Allen v. Toms River Reg'l Bd. of Educ., 233 N.J.Super. 642, 648, 559 A.2d 883 (Law Div.1989) ("If sufficient members remain qualified to act, there is no basis to invoke the doctrine.")
Affirmed.
NOTES
[1] We presume that the trial judge intended to sever only so much of the Heritage Hills' suit upon which she had not ruled. In any event, we so treat it. Thus, our order consolidating the appeals continues the consolidated caption the case bore in the trial court.
[2] The expression "full authorized membership" is used in the following sections of the MLUL: N.J.S.A. 40:55D-17, -26, -32, -34, -62 and -70.